William C. WAGGONER, et al.,
Plaintiffs-Appellees/Cross-Appellants,

v.

NORTHWEST EXCAVATING, INC.,
Defendant-Appellant/Cross-Appellee.

Nos. 78–2816, 78–2984.

United States Court of Appeals,
Ninth Circuit.

Sept. 3, 1982.

Wayne Jett, Los Angeles, Cal., for Waggoner.

Stanley E. Tobin, Los Angeles, Cal., argued, for defendant-appellant and cross-appellee; James G. Johnson, Hill, Farrer & Burrill, Los Angeles, Cal., on brief.

Before PREGERSON and NELSON, Circuit Judges, and TURRENTINE,* District Judge.

PREGERSON, Circuit Judge:

This case is before us on remand from the Supreme Court, *Northwest Excavating Inc. v. Waggoner,* —— U.S. ——, 102 S.Ct. 1417, 71 L.Ed.2d 640 (1982). The Court vacated our earlier opinion, *Waggoner v. Northwest Excavating, Inc.,* 642 F.2d 333 (9th Cir. 1981) and remanded the case for further consideration in light of *Kaiser Steel Corp. v. Mullins,* —— U.S. ——, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982).

In *Kaiser Steel,* the Supreme Court ruled that a court must entertain a "hot cargo" defense under 29 U.S.C. § 158(e) ("Section

* The Honorable Howard B. Turrentine, United States District Judge for the Southern District of California, sitting by designation.

8(e)")[1] "where [that] defense is raised by a party which § 8(e) was designed to protect, and where the defense is not directed to a collateral matter but to the portion of the contract for which enforcement is sought . . . ." 102 S.Ct. at 860.

In *Waggoner*, we declined to address a section 8(e) defense because of our prior ruling that "district courts may not decide, independent of the National Labor Relations Board, the merits of an unfair labor practice defense to enforcement of a collective bargaining agreement in a Section 301 action." 642 F.2d at 338, n.2, citing *Waggoner v. R. McGray, Inc.*, 607 F.2d 1229, 1235 (9th Cir. 1981).

The Supreme Court in *Kaiser Steel* rejected the argument that the legality under section 8(e) of a contested provision of a labor agreement can be decided only by the NLRB. *Id.*, 102 S.Ct. at 859–60. We therefore address Northwest's section 8(e) defense.

The particular aspect of this case to which the section 8(e) defense is relevant concerns the status of one Frank Sandoval and his helpers, hired by Northwest in November 1975 to repair and maintain its construction equipment. Previously, Northwest had used its own employees to do this work. We agreed with the district court's determination that Sandoval was, as Northwest contended, an independent contractor rather than a Northwest employee. We ruled, however, that by hiring Sandoval, Northwest had breached a provision of the collective bargaining agreement specifying that, except for major repairs, "[a]ll other maintenance and repairs which are normally and customarily performed by persons in classification of Heavy Duty Repairman/Welder shall be performed by em-

ployees covered by this agreement." We therefore held that Northwest was liable to the trustees of four union trust funds for employee fringe benefit contributions based on hours worked by Sandoval and his crew. Northwest argued that the provision which it had breached was an unlawful hot cargo clause because that provision required Northwest to cease doing business with Sandoval and his crew if they refused to become Northwest's employees or to become and remain members of the union.

The district court below did consider Northwest's hot cargo defense and found that the challenged provision did not violate section 8(e). We must review that ruling and determine if it is supported by substantial evidence. *National Woodwork Manufacturers' Association v. NLRB*, 386 U.S. 612, 646, 87 S.Ct. 1250, 1269, 18 L.Ed.2d 357.

The key question we must address is whether, under all the surrounding circumstances, the union's objective in negotiating the contested contractual provision was preservation of work for Northwest's employees, or whether the provision was calculated to satisfy union objectives elsewhere. *Id.* at 644–46, 87 S.Ct. at 1268–1269. We emphasize that section 8(e) does not prohibit labor agreements made and maintained to pressure an employer to preserve for its employees work traditionally done by them. *Id.* at 635, 87 S.Ct. at 1263. Relevant to this issue, we stated in our earlier opinion:

> At trial, it was established that Sandoval does *routine repair work* previously done by his predecessor, Hutchison, a heavy duty repairman *who was a union employee of Northwest.* Initially, Hutchison worked for Northwest without joining the union. His non-union employ-

---

1. Section 8(e), codified at 29 U.S.C. § 158(e), forbids labor agreements under which an employer agrees to cease doing business with, or to cease handling the products of, another employer (hot cargo provision). Specifically it provides in relevant part:

   It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer . . . agrees . . . to cease doing business with any other

   person, and any contract or agreement . . . containing such an agreement shall be to such extent unenforcible and void: *Provided*, That nothing in this subsection shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construction, alteration, painting, or repair of a building, structure, or other work . . . .

ment was the subject of grievance proceedings. As a result of the proceedings, Northwest began contributing to the trust funds on Hutchison's behalf.

642 F.2d at 338 (emphasis added).

Based on trial testimony it is clear that, as applied to Sandoval, the purpose of the contested provision was work preservation. Thus the district court correctly concluded that the challenged provision did not violate section 8(e).

In light of the foregoing, we reaffirm our earlier decision which affirmed in part, reversed in part, and remanded the matter to the district court for further proceedings.