LABORERS HEALTH & WELFARE TRUST FUND FOR NORTHERN CALIFORNIA; Laborers Vacation-Holiday Trust Fund for Northern California; Laborers Pension Trust Fund for Northern California; Laborers Training & Retraining Trust Fund for Northern California, Plaintiffs,

v.

Harold HESS, Individually and d/b/a Hess Concrete Construction Co., Inc., Defendants.

No. C-84-1804 RFP.

United States District Court, N.D. California.

Aug. 17, 1984.

---

Van Bourg, Allen, Weinberg & Roger, San Francisco, Cal., for plaintiffs.

Paul V. Simpson, David Miller, Thierman, Simpson & Cook, San Francisco, Cal., for defendants.

## MEMORANDUM AND ORDER

PECKHAM, Chief Judge.

### INTRODUCTION

This labor dispute involves an attempt to recover fringe benefit contributions for the period subsequent to the expiration of the most recent collective bargaining agreement between the defendants and their employees. The defendants have moved for summary judgment, alleging that they are entitled to prevail because jurisdiction is lacking. They have also requested an award of attorney's fees. Those motions are the subject of this memorandum and order.

### FACTS

This case presents a challenging question of subject-matter jurisdiction, but the relevant facts are quite straightforward. Defendant Hess Concrete Construction Co., Inc. (hereinafter "the Company") is a California corporation doing business as a general contractor in the construction industry. Defendant Harold Hess is the Company's principal stockholder and president. Like many general contractors, the Company was a party to a collective bargaining agreement for the years 1980–1983 with the Northern California District Council of Laborers (hereinafter "the Union"). Under the agreement, the Company was obligated to make contributions in certain amounts to four trust funds for each hour of employee labor that the Company used. The four trust funds were: (1) Laborers Health & Welfare Trust Fund for Northern California, (2) Laborers Vacation-Holiday Trust Fund for Northern California, (3) Laborers Pension Trust Fund for Northern California, and (4) Laborers Training & Retraining Trust Fund for Northern California.

On April 6, 1983, the Company notified the Union in writing that the Company planned to terminate the collective bargaining agreement. The termination became effective upon the agreement's expiration date of June 15, 1983. Thereafter, the Company and the Union negotiated for a new agreement. But the negotiations have been unsuccessful, and there has been no progress for many months. In November of 1983, the Company, responding to what it perceived as an impasse in negotiations, ceased making its contributions to the four trust funds.

The trust funds then initiated this lawsuit. They seek recovery of fringe benefit contributions (in accordance with the terms of the 1980–1983 collective bargaining agreement) for the period from November of 1983 to the present. Their complaint alleges that the court has jurisdiction under section 301 of the Labor Management Relations Act (hereinafter "LMRA"), 29 U.S.C. § 185 (1982), and under sections 502 and 515 of the Employee Retirement Income Security Act (hereinafter "ERISA"), 29 U.S.C. §§ 1132 & 1145 (1982).

On June 5, 1984, the defendants filed their summary judgment motion and request for attorney's fees. Both parties submitted briefs and supporting declarations, and, on July 16, 1984, the court heard oral argument. Having now thoroughly reviewed and considered the arguments of the parties, the court analyzes the problem as set forth below.

## LEGAL ANALYSIS

I. *Defendants' Motion for Summary Judgment on Ground that Subject-Matter Jurisdiction is Lacking*

The defendants maintain that they are entitled to summary judgment because neither section 301 of the LMRA nor sections 502 and 515 of ERISA provide a valid basis for subject-matter jurisdiction over the instant case. Their LMRA and ERISA arguments are best discussed separately.

### A. *Jurisdiction under section 301*

■ In determining whether the court has subject-matter jurisdiction under section 301, certain basic principles must be kept in mind. First, as a general rule, "[s]uits alleging unfair labor practices ... must be heard before the [National Labor Relations Board]; district courts have no jurisdiction to consider these matters." *Cement Masons Health & Welfare Benefit Fund for Northern California v. Kirkwood-Bly, Inc.*, 520 F.Supp. 942, 943 (N.D. Cal.1981), *aff'd*, 692 F.2d 641 (9th Cir.1982); *see also George Day Construction Co., Inc.*, 722 F.2d 1471, 1480 (9th Cir.1984); *Glaziers & Glassworkers Local Union #767 v. Custom Auto Glass Distributors*, 689 F.2d 1339, 1342 (9th Cir.1982). As the Supreme Court explained in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959), "[w]hen an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act, ... the federal courts must defer to the exclusive competence of the National Labor Relations Board ...." *See also Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83, 102 S.Ct. 851, 859, 70 L.Ed.2d 833 (1982). "The desire to protect the primary jurisdiction of the NLRB flows from the need to maintain centralized administration of the NLRA by a specialized agency. Labor law involves many difficult questions of policy best left to the agency that has the expertise needed to solve them. Thus, the courts have traditionally shown great deference to the NLRB." *Burke v. French Equipment Rental, Inc.*, 687 F.2d 307, 311 (9th Cir.1982).

■ Although the general rule is that the NLRB has exclusive jurisdiction over alleged unfair labor practices, that rule has an important exception. Specifically, Congress altered the basic scheme when it enacted section 301 of the LMRA, authorizing suits in federal district court to enforce collective bargaining agreements. *Mullins v. Kaiser Steel Corp.*, 642 F.2d 1302, 1316 (D.C.Cir.1980), *rev'd on other grounds*, 455 U.S. 72, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982).[1] "Consonant with that change, federal courts have independent jurisdiction to decide cases alleging the breach of collective bargaining agreements, even though that very breach may also be an unfair labor practice." *Id.; see also Motor Coach Employees v. Lockridge*, 403 U.S. 274, 298, 91 S.Ct. 1909, 1923, 29 L.Ed.2d 473 (1971); *Smith v. Evening News Ass'n*, 371 U.S. 195, 197, 83 S.Ct. 267, 268, 9 L.Ed.2d 246 (1962); *Castaneda v. Dura-Vent Corp.*, 648 F.2d 612, 616 (9th Cir.1981).

In *Kirkwood-Bly*, this court recently had occasion to apply those fundamental principles to a fact situation that was essentially identical to the one in the instant case. That case, like the instant one, involved an employer that had ceased making its trust fund contributions after its collective bargaining agreement with the union had expired. As in the instant case, the trust funds brought suit to compel payment of the contributions, and the employer moved for summary judgment on the ground that the court lacked jurisdiction.

In addressing the jurisdictional issue, the court first noted that "it is well-established ... that, after the expiration of a collective

---

1. Section 301 provides in relevant part:
   Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
   29 U.S.C. § 185(a) (1982).

bargaining agreement and during negotiations for a new one, the employer is required to continue trust fund contributions ...." 520 F.Supp. at 944.[2] The court explained that that obligation arises from section 8(a)(5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(5), which "makes it an unfair labor practice for the employer to unilaterally change terms and conditions of employment following the expiration date of the agreement." Id.[3] The court also advised that the obligation continues until negotiations reach an impasse. Id.[4]

Having clarified that the obligation to make trust fund contributions persisted after expiration of the collective bargaining agreement, the court next described the arguments of the parties:

> Defendant argues that any claim plaintiffs have for trust fund contributions arise[s] by virtue of section 8(a)(5) of the Act. The Garmon [San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959)] doctrine vests primary jurisdiction of cases arising under the Act in the N.L.R.B. Thus, defendant urges that we dismiss the action. Plaintiffs ... argue that the contract itself survives the expiration date. Hence they argue that this is a suit under section 301—to enforce a

collective bargaining agreement—and is therefore properly in the district court. 520 F.Supp. at 944. The court then concluded that "defendant's characterization [of the situation] is correct ...." Id.

The court's discussion in support of that conclusion was lengthy, but central to its decision was a determination that there was no collective bargaining agreement on which to base jurisdiction. The court explained that "[collective bargaining] agreements do not 'survive' [expiration] in the sense that they continue as legally operative documents; rather, the terms 'survive' in order to define the parameters of the employer's obligation under section 8(a)(5) to maintain the status quo during negotiations." Id. at 945. The court thus held that the suit "depend[ed] entirely upon the existence of section 8(a)(5)." Id. at 944. Because the plaintiffs' claim for unpaid contributions was founded solely on an alleged unfair labor practice, the court ruled that the claim was within the exclusive jurisdiction of the N.L.R.B. and not within the section 301 jurisdiction of the federal district courts. Id.

■ The plaintiffs appealed the decision to the Ninth Circuit. But the Ninth Circuit affirmed for the reasons this court had

---

**2.** The leading Ninth Circuit case on that point is *Peerless Roofing Co. v. N.L.R.B.*, 641 F.2d 734 (9th Cir.1981). In *Peerless Roofing*, the Ninth Circuit stated:

> During negotiations, the employer is required by § 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5) (1978), to maintain the status quo, even following the expiration date of the agreement .... If the employer's obligation to make trust fund payments were terminated by the expiration of the agreement, the union would never have an opportunity to bargain over those contributions. This result would not advance national labor policy as articulated in the National Labor Relations Act.

*Id.* at 736. Other cases adopting that view include *Producers Dairy Delivery Co., Inc. v. Western Conference of Teamsters Pension Trust Fund*, 654 F.2d 625, 627 (9th Cir.1981); *N.L.R.B. v. Haberman Construction Co.*, 641 F.2d 351, 357 (5th Cir.1981) (en banc), and *Hinson v. N.L.R.B.*, 428 F.2d 133, 137 (8th Cir.1970).

**3.** Section 8(a)(5) provides:

> It shall be an unfair labor practice for an employer ... to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

The Supreme Court has interpreted section 8(a)(5) to prohibit employers from unilaterally instituting changes that are subjects of mandatory bargaining—*i.e.*, wages, hours, and other terms and conditions of employment. *See N.L.R.B. v. Katz*, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962).

**4.** "When the employer and the union have bargained to impasse, the employer is then free to institute unilateral changes in terms and conditions of employment that were reasonably comprehended by the employer's pre-impasse bargaining proposals." *I.A.M. Nat'l Pension Fund v. Schulze Tool & Die Co., Inc.*, 564 F.Supp. 1285 (N.D.Cal.1983); *see also Producers Dairy Delivery Co., Inc. v. Western Conference of Teamsters Pension Trust Fund*, 654 F.2d 625, 627 (9th Cir. 1981).

given. *See Cement Masons Health & Welfare Trust Fund for Northern California v. Kirkwood-Bly, Inc.*, 692 F.2d 641 (9th Cir.1982). Consequently, the law in this circuit is clear: There is no section 301 jurisdiction over claims for fringe benefit contributions arising after expiration of a collective bargaining agreement. It follows that section 301 does not provide a basis for jurisdiction over the instant suit.

### B. *Jurisdiction under ERISA*

In their brief in opposition to defendants' motion for summary judgment, the plaintiffs apparently concede that section 301 jurisdiction does not exist. They steadfastly argue, however, that the court has jurisdiction under sections 502 and 515 of ERISA.

Section 515 requires employers to comply with their promises to make fringe benefit contributions. It specifically mandates:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

Section 502 is in the same subchapter of ERISA as section 515. It creates a cause of action in federal court to enforce the provisions of the subchapter. In pertinent part, it provides:

> (a) A civil action may be brought—
>
> > (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions

of this subchapter or the terms of the plan.

■ Because section 515 is within the same subchapter as section 502, it clearly is reasonable to interpret section 502 as affording a basis for district court jurisdiction over violations of section 515. Hence, resolution of plaintiffs' motion to dismiss for lack of jurisdiction turns on whether section 515 pertains to contribution obligations arising from section 8(a)(5) of the NLRA.

Neither plaintiffs nor defendants recognize that that essentially is a novel question of law. Rather, defendants confidently urge that *Kirkwood-Bly* is dispositive. *See* Opening Brief, filed 6/5/84, at 7–10; Reply Brief, filed 7/9/84, at 8. Yet this court specifically noted in *Kirkwood-Bly* that the plaintiffs had not alleged that section 515 of ERISA provided a basis for jurisdiction. *See* 520 F.Supp. at 946 n. 2. Thus, the Ninth Circuit's affirmance in *Kirkwood-Bly* certainly does not control the instant case.[5]

Plaintiffs more reasonably suggest that this court's recent opinion in *I.A.M. Nat'l Pension Fund v. Schulze Tool & Die Co., Inc.*, 564 F.Supp. 1285 (N.D.Cal.1983), "indicates that this Court does have jurisdiction under ERISA ... over actions for contributions for the period after the expiration of the collective bargaining agreement." Opposition Brief, filed 7/2/84, at 4. *Schulze*, like the instant case, involved a collective bargaining agreement that required the employer to make trust fund contributions. The agreement expired on March 31, 1980, but the employer continued making its contributions until April 14, 1980. Thereafter, the employer ceased its payments, and the trust fund brought suit,

---

**5.** Defendants also rely on two unpublished cases: *Mill Cabinet Health & Welfare Trust Fund for Northern California v. Gutridge* (C–82–4853 SW) and *Mill Cabinet Health & Welfare Fund for Northern California v. Kitchen Fixtures, Inc.* (C–82–0974 SW (JSB)). But *Gutridge*, like *Kirkwood-Bly*, did not involve alleged ERISA jurisdiction and thus is inapposite. *Kitchen Fixtures*,

in contrast, did involve a section 515 allegation, which the court rejected on the ground that district courts have no jurisdiction over suits involving expired collective bargaining agreements. The court's opinion included no discussion of the basis for that proposition, however, so *Kitchen Fixtures* is only mildly persuasive authority.

seeking to collect both unpaid contributions and withdrawal liability.[6] *Id.* at 1287.

This court adjudicated the claims and ruled that the employer was not liable because negotiations had reached an impasse by April 15, 1980. *Id.* at 1297–98. By assessing the merits of the claim for unpaid contributions, the court implicitly held that it had jurisdiction over the claim. But the court did not explicitly discuss the question of jurisdiction in its opinion. Thus, there seems to be no published judicial decision squarely addressing the issue of whether section 515 of ERISA, in conjunction with section 502, gives the district courts jurisdiction over actions for recovery of fringe benefit contributions allegedly due under expired collective bargaining agreements.

■ Because the case law provides little guidance on the proper interpretation of section 515, it is important to carefully examine the language, legislative history, and purpose of the statute. Neither side has done so in any detail.

■ Plaintiffs have, however, observed that in the part of ERISA dealing with employer withdrawals, the term "obligation to contribute" is defined as "an obligation to contribute arising ... (1) under one or more collective bargaining (or related) agreements, *or (2) as a result of a duty under applicable labor-management relations law."* 29 U.S.C. § 1392(a) (1982) (emphasis added). From that definition, and from the absence of a definition of "obliga-

tion to contribute" in the subchapter of ERISA including section 515, plaintiffs properly conclude that the phrase "obligated to make contributions" in section 515 includes an obligation to contribute arising under section 8(a)(5) of the NLRA.[7]

But, contrary to plaintiffs' assertions, that conclusion is not by itself sufficient to compel the further determination that section 515 applies to employers whose obligation to contribute arises from section 8(a)(5) of the NLRA. Rather, an examination of the remainder of the statutory language is necessary to determine whether it imposes any limitations on the language "employer ... obligated to make contributions." If, for instance, the statute mandated the payment of contributions by "[e]very employer who is obligated to make contributions *under a collective bargaining agreement,"* it would be clear that an obligation arising as a result of section 8(a)(5) would not be covered. Examination of the statute reveals, however, that there is no such limitation. The statute dictates that "[e]very employer who is obligated to make contributions ... *under the terms* of a collectively bargained agreement shall ... make such contributions." (Emphasis added.) Congress's decision to speak in terms of "obligations *under the terms* of a collective bargaining agreement," rather than "obligations *under a collective bargaining agreement,"* suggests that it meant to include obligations arising as a result of section 8(a)(5) of the NLRA. *Cf. Kirkwood-Bly,* 520 F.Supp. at 945 (section 8(a)(5) obli-

---

6. Withdrawal liability is something quite different from regular fringe benefit contributions. As the Supreme Court has recently explained, withdrawal liability arises when "an employer withdraw[s] from a multiemployer pension plan ...." *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* — U.S. —, —, 104 S.Ct. 2709, 2715, 81 L.Ed.2d 601 (1984). It is calculated not on the basis of employee hours worked, but as the employer's proportionate share of "the difference between the present value of [the pension plan's] vested benefits and the current value of the plan's assets." *Id.* The effective date of the ERISA amendments instituting withdrawal liability was April 29, 1980. *Schulze,* 564 F.Supp. at 1289.

7. "It is true that the definition of obligation to contribute in § 1392 states that the definition is '[f]or purposes of this part,' evidently referring to Part 1—'Employer Withdrawals,' which is only one of three parts of Subtitle E, 'Special Provisions for Multiemployer Plans ....'" *Schulze,* 564 F.Supp. at 1294 n. 4. "No other definition of obligation to contribute is found anywhere in ERISA, however. There is no reason to believe that Congress intended to create any discontinuity between the employer withdrawal part of the Act and the other contexts in which the question of obligation to contribute might arise." *Id.* Thus, it makes sense to apply the definition of section 1392 when interpreting the phrase "obligated to make contributions" in section 515.

gation to continue trust fund contributions after expiration of collective bargaining agreement arises under *the terms* of the agreement *not* under *the agreement itself*).

█ The legislative history and purpose of section 515 bolster that conclusion. Admittedly, Congress did not specifically discuss the problem at hand. But legislators did explain the goal of section 515, and extension of section .515 to suits based on section 8(a)(5) of the NLRA is consistent with that goal.

Both Representative Thompson and Senator Williams explained the purpose of section 515 as follows:

> Recourse available under current law for collecting delinquent contributions is insufficient and unnecessarily costly. Some simple collection actions brought by plan trustees have been converted into lengthy, costly, and complex litigation concerning claims and defenses unrelated to the employer's promise and the plan's entitlement to the contributions. This should not be the case. Federal pension law must permit trustees of. plans to recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-management relations law (other than 20 U.S.C. 186). Sound national pension policy demands that employers who enter into agreements providing for pension contributions not be permitted to repudiate their pension promises .... [T]his legislation is intended to clarify the law ... by providing a direct, unambiguous ERISA cause of action to a plan against a delinquent employer.

126 Cong.Rec. 23039 (1980) (remarks of Rep. Thompson); *id.* at 23288 (remarks of Sen. Williams).

Representative Thompson and Senator Williams also endorsed certain court decisions involving attempts to recover delinquent contributions, and disapproved of the results in other cases. *See id.* at 23039

(remarks of Rep. Thompson) & 23288 (remarks of Sen. Williams). The cases that the legislators favored were *Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960), *Lewis v. Mill Ridge Coals, Inc.*, 298 F.2d 552 (6th Cir.1962), and *Huge v. Long's Hauling Co., Inc.*, 590 F.2d 457 (3d Cir.1978), *cert. denied*, 442 U.S. 918, 99 S.Ct. 2840, 61 L.Ed.2d 285 (1979). In all three of those cases, an employer attempted to raise one or more defenses to a trust fund's claim for unpaid contributions. *Benedict Coal* involved a defense that the union had violated the no-strike clause in the collective bargaining agreement; *Mill Ridge* involved a defense that the trustees had failed to provide adequate consideration; and *Long's Hauling* involved defenses that the collective bargaining agreement violated the Sherman Act and the hot cargo clause of the NLRA, 29 U.S.C. § 158(e) (1982). In each case, the court concluded that the employer was not entitled to raise the asserted defense.

In contrast, in two other cases—*Washington Area Carpenters' Welfare Fund v. Overhead Door Co.*, 488 F.Supp. 816 (D.D. C.1980), *rev'd*, 681 F.2d 1 (D.C.Cir.1982), *cert. denied*, 461 U.S. 926, 103 S.Ct. 2085, 77 L.Ed.2d 296 (1983), and *Western Washington Laborers-Employers Health & Security Trust Fund v. McDowell*, 103 LRRM 2219 (W.D.Wash.1979)—judges allowed employers to raise and prevail on a defense unrelated to the employer's promise to make contributions. In both *Overhead Door* and *McDowell*, the trial court ruled that lack of majority support for a union that negotiated a prehire agreement was a valid defense to compliance with provisions in the agreement requiring the employer to make trust fund contributions. Representative Thompson and Senator Williams stated that those cases were incorrectly decided, thus making clear that section 515 of ERISA was intended to reduce the availability of defenses in actions to recover trust fund contributions.[8]

---

**8.** Section 515 does not eliminate all defenses to actions to recover unpaid trust fund contributions. As the Supreme Court recently explained, "[t]he Congressmen did not say that employers should be prevented from raising all defenses; rather they spoke in terms of 'unrelat-

Given that legislative purpose, it would make little sense to limit section 515 to actions involving obligations based on extant collective bargaining agreements. Extraneous defenses such as the ones in *Benedict Coal, Mill Ridge, Long's Hauling, Overhead Door,* and *McDowell* could arise in cases involving expired collective bargaining agreements as well. For example, an employer whose collective bargaining agreement had terminated might argue that it need not continue making trust fund payments because the collective bargaining agreement had violated the hot cargo clause of the NLRA and thus it had never assumed an obligation to make such payments. Allowing the employer to assert such a defense would complicate and delay any action to recover trust fund contributions pursuant to section 8(a)(5) of the NLRA, and would therefore subvert the overall purpose of ERISA: "to protect the economic integrity of the retirement, health, and unemployment plans upon which so many working people rely." *Kaiser Steel Corp.*, 455 U.S. at 97, 102 S.Ct. at 866 (Brennan, J., dissenting); *see also* 29 U.S.C. § 1001 (1982). Accordingly, there is good reason to believe that courts should construe section 515 of ERISA to apply to contribution obligations arising as a result of section 8(a)(5) of the NLRA.

Defendants argue, however, that section 514(d) of ERISA, 29 U.S.C. § 1144(d)

(1982), precludes such a result. That section states:

[n]othing in this title shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in Sections 1031 and 1037(b) of this title) or any rule or regulation issued under any such law.

Defendants interpret section 514(d) as a pronouncement that Congress's enactment of the provisions of ERISA, including section 515, was not meant to disturb existing laws and legal doctrines. Defendants further maintain that prior to the passage of section 515, it was well-established that the N.L.R.B. had exclusive jurisdiction over actions for recovery of trust fund contributions due after expiration of a collective bargaining agreement. Defendants therefore conclude that section 515 does not alter that rule and thus does not provide for district court jurisdiction over such actions.

But defendants' argument rests on a mistaken premise. In 1980, when section 515 was enacted, it was far from clear that section 301 of the LMRA did not afford district courts jurisdiction over cases such as the instant one.[9] Indeed, in its *Kirkwood-Bly* opinion, rendered in August of 1981, this court observed that the question of whether section was a basis for jurisdiction was "complex" and "a matter of first impression." 520 F.Supp. at 943. Consequently, when Congress passed section 515

---

ed' and 'extraneous' defenses." *Kaiser Steel Corp.*, 455 U.S. at 88, 102 S.Ct. at 861. "[A] defense is properly allowable when it relates to a promise to make contributions that is illegal." *Southern California Retail Clerks Union & Food Employers Joint Pension Trust Fund v. Bjorklund,* 728 F.2d 1262, 1265–66 (9th Cir.1984). In other words, "an employer can successfully defend a suit for delinquent contributions by showing that the promise to make contributions was itself illegal." *Id.* at 1265; *see also Kaiser Steel Corp.*, 455 U.S. at 88, 102 S.Ct. at 861; *Waggoner v. Northwest Excavating, Inc.*, 685 F.2d 1224 (9th Cir.1982), *cert. denied,* 459 U.S. 1109, 103 S.Ct. 737, 74 L.Ed.2d 959 (1983).

**9.** *Air Line Pilots Ass'n v. Northwest Airlines, Inc.,* 627 F.2d 272 (D.C.Cir.1980), on which defendants heavily rely, is distinguishable on the basis that the jurisdictional principle invoked in that case was firmly established prior to the passage

of ERISA. That principle was that when there is a dispute over the application or interpretation of a collective bargaining agreement between an air carrier and its employees, the dispute shall be resolved through arbitration, rather than through litigation in the federal district courts. Not only does a statute enacted well before ERISA set forth that rule, but also courts advocated the rule in numerous pre-ERISA cases. *See id.* at 275. Because the rule was deeply entrenched prior to ERISA's enactment, section 514(d) of ERISA is a clear mandate that ERISA did not modify the rule to make federal district courts available for resolution of pension disputes between air carriers and their employees. Thus, the District of Columbia Circuit quite properly concluded in *Air Line Pilots Ass'n* that arbitration of such disputes remains compulsory. *See id.* at 275–76.

of ERISA, it probably did not perceive that giving district courts jurisdiction over actions involving contribution obligations due under expired collective bargaining agreements would in any way modify existing law. Hence, its statement in section 514(d) that the provisions of ERISA did not alter existing law is not inconsistent with the conclusion that Congress intended section 515 to apply under circumstances such as the ones in the instant case.

Accordingly, the court finds that section 515 of ERISA, in conjunction with section 502, provides a basis for jurisdiction over suits to collect contributions owing under expired collective bargaining agreements. The court recognizes that such a result is to some extent inconsistent with the ideal of directing labor law issues to a body with expertise in the area of labor law. But section 515 is far from the first context in which Congress has seen fit to give the federal district courts jurisdiction over cases involving unfair labor practice questions. *See* pp. 276–277, *supra; see also Kaiser Steel Corp.* Moreover, the court's interpretation of section 515 represents but a minor inroad on the NLRB's primary jurisdiction over unfair labor practice issues. The scope of section 515 is narrow, applying only to actions to collect trust fund contributions. Further, if the same unfair labor practice question arises in both an NLRB proceeding and a suit in federal district court, "[a]ppropriate deference to the jurisdiction and expertise of the agency will often require a stay of judicial proceedings." *Northern California District of HOD Carriers, Bldg. & Construction Laborers, AFL–CIO v. Opinski,* 673 F.2d 1074, 1075 (9th Cir.1982); *see also Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County v. Celotex Corp.,* 708 F.2d 488, 490 n. 3 (9th Cir. 1983). Thus, in the context of section 515, the interest in directing unfair labor practice issues to the N.L.R.B. is not sufficiently compelling to convince this court to diverge from what it perceives as the clear implication of section 515's language and legislative history. The court therefore holds that it has jurisdiction over the in-

stant case pursuant to sections 502 and 515 of ERISA.

## II.  *Defendants' Request for Attorney's Fees*

■ The defendants have requested an award of attorney's fees under 28 U.S.C. section 1927 (1982), Rule 11 of the Federal Rule of Civil Procedure, and section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1) (1982). In seeking such an award, defendants argue:

> The court is requested to take notice that the Trust Funds have hundreds of millions of dollars in assets. This sort of frivolous litigation is nothing more than a David and Goliath scenario. Goliath, the Trust Funds, attempts to make it more expensive for David, the Employer, to litigate than to resume payments to the Trust Funds and re-sign with the Union. Defendants submit that the judicial process should be utilized to resolve *bona fide* disputes, not as a mace by the party with the largest bank account. Accordingly, Defendants request the assessment of attorneys [sic] fees and costs against the Funds and their counsel.

Opening Brief, filed 6/5/84, at 10. Defendants would be well-advised to be more mindful of their own admonition that "the judicial process should be utilized [only] to resolve *bona fide* disputes ...." Even if the court had agreed with defendants' interpretation of ERISA, defendants would not have been entitled to an award of attorney's fees, because the jurisdictional issue presented is both novel and difficult. It is defendants' request for attorney's fees, not plaintiffs' jurisdictional argument, that borders on the frivolous.

## CONCLUSION

Section 301 of the LMRA does not provide a basis for asserting jurisdiction over the instant lawsuit. But section 515 of ERISA, together with section 502, supplies a jurisdictional foundation.

Accordingly,

IT IS HEREBY ORDERED that defendants' motion for summary judgment motion and request for attorney's fees is denied.