Jack MOLDOVAN and Jack Draper, as Trustees for the Tri-State UFCW and Employers Benefit Fund,

v.

The GREAT ATLANTIC & PACIFIC TEA COMPANY, INC.

Appeal of Jack MOLDOVAN and Jack Draper.

No. 85–3276.

United States Court of Appeals, Third Circuit.

Argued Dec. 2, 1985.

Decided May 13, 1986.

William P. Getty, Joseph A. Vater (argued), Meyer, Unkovic and Scott, Pittsburgh, Pa., for appellants.

Leonard L. Scheinholtz (argued), William Bevan, III, Robert F. Prorok, David J. McAllister, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellee.

Before ADAMS, Acting Chief Judge, and GIBBONS and STAPLETON, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Jack Moldovan and Jack Draper, the trustees of a multi-employer welfare benefit fund (trustees), appeal from a final judgment in favor of the Great Atlantic & Pacific Tea Company, Inc. (A & P). The trustees sought payment to the fund allegedly due under a collective bargaining agreement. Alternatively they sought recovery under Pennsylvania law or under section 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5) (1982). The district court held that the trustees' claim under the collective bargaining agreement was barred by collateral estoppel, that Pennsylvania law was preempted by federal law, and that only the National Labor Relations Board could enforce section 8(a)(5). We hold that the court erred in holding that the trustees are collaterally estopped from enforcing their claim under the collective bargaining agreement. Thus we reverse.

## I.

Jack Moldovan and Jack Draper, are, respectively, the employer and employee trustees of a multi-employer welfare benefit fund created, as authorized by section 302(c) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 186(c) (1982), by two labor organizations and five employers. The labor organizations are Locals 590 and 424 of the United Food and Commercial Workers Union, AFL–CIO. The employers are the defendant, A & P, and four other chain store operators. The fund's purpose is to provide group benefits for covered employees in the form of life, accident, and health benefits. The level of benefit is within the discretion of the trustees, with the intention that they "shall provide the maximum amount of benefits which the Fund can, from time to time, furnish consistent with good business practice, after taking into consideration the reasonable reserves to be established and the payment of administration expenses." Joint Appendix at 725 (Trust Fund Agreement and Declaration of Trust, Art I, § 1.2, ¶ 2). Eligible fund beneficiaries include current employees of the five employers as well as retirees. While the trustees determine benefits, contributions are determined by collective bargaining. Only one of the labor organizations participating in the fund, Local 590, has a collective bargaining relationship with A & P.

Local 590 and A & P grieved and arbitrated the question of whether a valid collective bargaining agreement existed after the nominal expiration date of their 1977–1980 collective bargaining agreement. The arbitrator ruled that no collective bargaining agreement existed. Local 590 then filed suit in the United States District Court for the Western District of Pennsylvania seeking to modify the arbitrator's decision. The district court entered summary judgment against Local 590 and this court affirmed. *See United Food & Commercial Workers International Union, Local 590 v. The Great Atlantic & Pacific Tea Co.*, 734 F.2d 455 (3d Cir.1984).

In the meantime, the trustees had filed suit in district court against A & P for A & P's failure to make contributions to the fund in accordance with the alleged collective bargaining agreement between Local 590 and A & P. The trustees' action was stayed pending disposition of the earlier arbitration. Once the arbitration was resolved, however, the district court held that the trustees were collaterally estopped from litigating the question whether A & P

owed contributions to the fund because they were bound by the arbitrator's decision that no collective bargaining agreement existed. The trustees contend that the district court's holding is a misapplication of the law respecting the preclusive effect of arbitration awards against third parties.

At the outset we must distinguish some issues that are not presented. If A & P lost an arbitration on an issue and a court confirmed the award, A & P would not be free to relitigate the issue when sued by a third party who did not participate in the arbitration. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 333–37, 99 S.Ct. 645, 652–54, 58 L.Ed.2d 552 (1979); *Wilkes-Barre Publishing Co. v. Newspaper Guild, Local 120,* 647 F.2d 372, 383 (3d Cir.1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982). Conversely, Local 590, which lost the arbitration and the case in which it sought modification, would not be free, in litigation with a third party, to relitigate the issue on which it lost. Local 590 is not, however, a party to this lawsuit.

Moreover, this case is not a suit by employees in the A & P bargaining unit for wages or benefits due under a collective bargaining agreement. When an employee's claim "is based upon breach of the collective bargaining agreement, [the employee] is bound by terms of that agreement which govern the manner in which contractual rights may be enforced." *Vaca v. Sipes,* 386 U.S. 171, 184, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967). That result follows, not because of principles of the law of judgment preclusion, but because in the field of labor relations the courts ordinarily defer to collectively-bargained-for, dispute-resolution procedures. *Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728, 736, 101 S.Ct. 1437, 1442, 67 L.Ed.2d 641 (1981).

■ Even in cases where employees in a bargaining unit sue to enforce claims arguably based upon a collective bargaining agreement, however, the federal labor law policy favoring bargained-for, dispute-resolution mechanisms yields to competing policies in two situations: First, a member of the bargaining unit may bring a separate suit against the employer and the union if he charges a breach of the duty of fair representation in processing a grievance or arbitration, *see DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 164, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983); *Vaca v. Sipes,* 386 U.S. at 176–86, 87 S.Ct. at 909–14; *Cady v. Twin Rivers Towing Co.,* 486 F.2d 1335, 1337 (3d Cir.1973); and, second, a member of the bargaining unit may bring a separate suit if his claim, although perhaps comprehended by the collective bargaining agreement, is also based upon federal statutory rights separate from that agreement, *see Barrentine,* 450 U.S. at 737, 101 S.Ct. at 1443; *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 59–60, 94 S.Ct. 1011, 1025, 39 L.Ed.2d 147 (1974).

These statutory rights cases define the outer reach of the federal labor law policy of binding members of a bargaining unit to bargained-for, dispute-resolution mechanisms. This court has been careful to preserve the line between instances when members of a bargaining unit are bound by the bargained-for resolution of a dispute and when they are not. In *Burke v. Latrobe Steel Co.,* 775 F.2d 88 (3d Cir.1985), we held that even members of a bargaining unit could sue their employer for violations of the anti-discrimination clause, 29 U.S.C. § 1140 (1982), and the fiduciary duty clause, 29 U.S.C. § 1104 (1982) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001–1461 (1982). *See also Barrowclough v. Kidder, Peabody & Co.,* 752 F.2d 923, 939 (3d Cir. 1985); *Viggiano v. Shenango China Division of Anchor Hocking Corp.,* 750 F.2d 276, 280–81 (3d Cir.1984).

■ If the plaintiffs were members of the A & P bargaining unit and the dispute involved the interpretation of a collective bargaining agreement containing an arbitration clause, we would agree that such plaintiffs would be bound by the arbitration award. That would follow not as a matter of collateral estoppel, but as a mat-

ter of the substantive federal law of labor relations. Where, as here, the dispute is not over the terms of a collective bargaining agreement, however, but is over its existence, even members of the bargaining unit are entitled to a *judicial* resolution of the question whether such a contract was still in effect. *See, e.g., Gariup v. Birchler Ceiling and Interior Co.*, 777 F.2d 370, 373 n. 8 (7th Cir.1985); *International Brotherhood of Electrical Workers, Local 1228 v. Freedom WLNE–TV, Inc.*, 760 F.2d 8, 10 (1st Cir.1985); *Rochdale Village, Inc. v. Public Service Employees Union*, 605 F.2d 1290, 1294 (2d Cir.1979); *International Union v. International Telephone and Telegraph Corp.*, 508 F.2d 1309, 1313 (8th Cir.1975); *International Ladies' Garment Workers' Union v. Ashland Industries*, 488 F.2d 641, 644 (5th Cir.), *cert. denied*, 419 U.S. 840, 95 S.Ct. 71, 42 L.Ed.2d 68 (1974).

■ In this case the matter of dispute between Local 590 and A & P was the existence of a collective bargaining agreement. While Local 590 filed a grievance claiming the contract continued, A & P contended otherwise. The parties agreed to submit to arbitration the question whether the agreement was still in effect; an issue that would ordinarily be resolved by a court. It is far from clear that the federal law of labor relations requires the conclusion that Local 590's decision to *submit* that question to arbitration binds the members of the bargaining unit that it represents. The arguments favoring binding members of the bargaining unit in that respect are considerably narrower than those favoring binding them to arbitral contract interpretations. In a broad sense, a decision by a union to submit to arbitration the question of the continued existence of a contract is an exercise of its collective bargaining authority. In a narrower sense, arbitration is not bargaining. Nevertheless we assume, *arguendo*, that an arbitrator's decision on an issue ordinarily subject to judicial resolution does, as a matter of substantive federal labor law, bind members of the bargaining unit.

Moldovan and Draper, however, are not members of the A & P bargaining unit.

They are trustees of a fund that has as its beneficiaries employees in five bargaining units, not all of whom are even represented by Local 590, and retirees who are not members of *any* bargaining unit. Benefits paid from the fund are determined by the trustees independent of the collective bargaining process. The fund trustees, who by virtue of section 302(c) of the LMRA must equally represent employers and employees, have fiduciary obligations on behalf of all the beneficiaries. The level of contribution for each participating employer, however, is determined by collective bargaining between the employer and the representative of the bargaining unit. Therefore, the level of contribution may differ for each of the five employer members. In addition, bargaining between the employer and the union representative over the level of contributions or the obligation of the employer even to make contributions may affect the wages and employment opportunities of the members of that unit. This in turn may affect not only the funds available to the trustees to pay benefits, but the bargaining posture of the collective bargaining representatives in the other four units, where job preservation may be less of an issue than preservation of the solvency of the fund. There is, in short, an inherent conflict between the interests of members of Local 590's A & P bargaining unit and the interests of other fund beneficiaries. *See U.M.W. Health & Retirement Funds v. Robinson*, 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982); *NLRB v. Amax Coal Co.*, 453 U.S. 322, 336–38, 101 S.Ct. 2789, 2797–98, 69 L.Ed.2d 672 (1981).

None of the policies that have been identified as favoring arbitral resolutions in the collective bargaining context apply to this case. The underlying dispute is not one as to which labor arbitrators are deemed expert; indeed the existence of the contract is ordinarily a matter for the courts. The trustees are not, and lawfully cannot be, participants in the collective bargaining process. The potential for conflict of interest that is the basis for the duty of fair representation exception is, in the case of the fund and the bargaining unit, patent. ERISA confers on fund beneficiaries statu-

tory rights entirely apart from those that are collectively-bargained-for.

The Supreme Court and this court have consistently held that bargaining representatives do not represent trustees of benefit plans. For example, in *Central States v. Central Transport, Inc.*, — U.S. —, 105 S.Ct. 2833, 2843, 86 L.Ed.2d 447 (1985), the Court held that a trustee need not rely on the union to monitor an employer's compliance with the plan. Similarly, in *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 370–76, 104 S.Ct. 1844, 1848–51, 80 L.Ed.2d 366 (1984), the Supreme Court held that trustees of a multi-employer fund may seek judicial enforcement of an employer's obligation, contained in a collective bargaining agreement, to contribute to a fund without resorting to arbitration of the underlying dispute over the meaning of that agreement. In *Robbins*, Justice Powell explained,

> These are multiemployer trust funds. Each of the participating unions and employers has an interest in the prompt collection of the proper contributions from each employer. Any dimunition of the fund caused by the arbitration requirements of a particular employer's collective-bargaining agreement would have an adverse effect on the other participants. The enforcement mechanisms established in the trust agreements protect the collective interests of the parties from the delinquency of individual employers by allowing the trustees to seek prompt judicial enforcement of the contribution requirements.

466 U.S. at 373, 104 S.Ct. at 1850 (footnotes omitted).

The conflict of interest that Justice Powell identified in *Robbins* may also be present in cases where the employer and the union arbitrate before the trustees of a fund act. In *Trustees of Local 478 Trucking and Allied Industries Pension Fund v. Siemens Corp.*, 721 F.2d 451, 457 (3d Cir.1983), this court recognized the same potential for conflict, and rejected the contention that an arbitration clause should

limit fund trustees' access to the courts. Furthermore this court in *Siemens* expressly rejected the position that each case should turn on an individual determination as to the way in which the arbitration may be handled. Judge Sloviter wrote,

> Chief Judge Seitz, in his concurring opinion, suggests that the Trustees should be free to initiate their own action only where a conflict of interest makes it unlikely that the union will arbitrate the Trustees' claim in good faith. We share the Chief Judge's reluctance to widen federal trial court jurisdiction at the expense of the valuable processes of arbitration. We believe it is preferable to follow the "bright line" approach established here for a number of reasons. First, the other approach would create an ancillary issue of the union's ability to arbitrate in good faith in every suit brought by the Trustees, making the union a necessary, if not indispensable, party to every Trustees' suit. The preliminary inquiry into the existence of actual or potential conflict between the trustees and the union would generate more trial court activity than it would abate and would, in many instances, be more extended and complex than resolution of the merits of the employer's asserted obligation to the pension fund. Second, the issue of good faith would be, by its very nature, divisive and would unnecessarily pit the Trustees and the union as opponents. Third, proof of the ability to arbitrate in good faith may often be speculative and difficult, leaving the trust beneficiaries inadequately protected against those conflicts of interest that may be subtle, or as yet unrevealed. For these reasons, we have opted for a generally applicable rule under which the litigation would be limited to the relevant issue of the company's obligation to make the payment.[1]

*Id.*

■ The district court concluded that issue preclusion barred the trustees from relitigating the issue whether a collective

---

1. Judge Stapleton does not share the views expressed herein with respect to the significance of the *Siemens* decision in the context of this case.

bargaining agreement existed, stating that the trustees were "virtually represented" in the prior litigation by Local 590. We disagree, however, that the law of preclusion requires that result. A more fundamental issue is whether such a law would be consistent with due process. Although mutuality of estoppel by judgment is no longer considered to be a due process requirement, the development of nonmutual collateral estoppel made no change in the requirement that a party against whom collateral estoppel has been asserted have some fair relationship with the prior litigation relied upon. As the Supreme Court has explained,

> Some litigants—those who never appeared in a prior action—may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issues which stand squarely against their position.

*Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1970) (citations omitted). *See also Parklane Hosiery Co.,* 439 U.S. at 332–33, 99 S.Ct. at 652; *United States v. Webber,* 396 F.2d 381, 386 (3d Cir.1968).

■ Whether the trustees had such a relationship with the prior litigation that its outcome can be held binding upon them depends upon what obligation Local 590 had to safeguard their interests. A nonparty may be collaterally estopped if the litigating party acted in a fiduciary capacity for a nonparty. *See Sea Land Services v. Gaudet,* 414 U.S. 573, 593, 94 S.Ct. 806, 819, 39 L.Ed.2d 9 (1974). There are, however, due process limits to the recognition of a representative party status binding nonparties. As Chief Justice Stone wrote, "a selection of representatives for purposes of litigation, whose substantial interests are not necessarily or even probably the same as those whom they are deemed to represent, does not afford the protection to absent parties which due process requires."

*Hansberry v. Lee,* 311 U.S. 32, 45, 61 S.Ct. 115, 119, 85 L.Ed. 22 (1940). It is the identity of *interests* that determines the due process question, not, as the district court apparently believed, the identity of *issues.*

■ There is in every instance of a multi-employer benefit plan, and in every instance of even a single-employer benefit plan which includes retirees among its beneficiaries, a conflict between the interests of the fund and the interests of the members of a bargaining unit so fundamental that as a matter of due process the union representing employees in that unit cannot ever be deemed the representative of the fund. Courts which have addressed the question have recognized that fund trustees are not collaterally estopped from relitigating issues that a labor organization has litigated and lost. *See Board of Trustees v. Universal Enterprises,* 751 F.2d 1177 (11th Cir.1985); *O'Hare v. General Marine Transport Corp.,* 740 F.2d 160 (2d Cir. 1984). *Hansberry v. Lee* requires as much.

But even if *Hansberry v. Lee* were not controlling and we dealt only with the common law of judgment preclusion, the district court's approach was fundamentally unsound. The court focused on the interests of the parties in resolving a particular issue rather than on their relationship. The elimination of the requirement of mutuality of estoppel by judgment is justified principally, if not exclusively, by the interest of the judicial system in avoiding the burden inherent in the relitigation of issues about which a losing party was afforded fair notice and an opportunity to be heard. It makes little sense to apply a judge-made rule of nonmutual estoppel by judgment in situations in which litigation over the application of the rule may be as complex as the litigation which may be avoided by such application. By concentrating on whether the issue is the same in both cases and on the interests of the original party in litigating that issue, rather than on whether there is such an identity of interests between the first and second party that the second should ever be deemed in privity with the first, the district court applied a

rule that would require case-by-case adjudication.

In *Siemens*, this court recognized that the case-by-case approach was unsound because it "would generate more trial court activity than it would abate and, in many instances, would be more extended and complex than resolution of the employer's asserted obligation to the pension fund." 721 F.2d at 457. We follow the bright line approach of *Siemens* in holding that the pension trustees are not collaterally estopped from relitigating the issues decided in the arbitration between the union and the employer.

A & P contends that the collective bargaining agreement has expired. There is, however, a material issue of fact as to whether the contract was extended beyond its nominal termination date. That being so, we must reverse and remand.

## II.

Since we are remanding for further proceedings it is appropriate to address the other respects in which the trustees claim that the district court erred.

### A.

### Preemption of State Law

The trustees' state law claim is that A & P's unilateral termination of pension payments to laid-off workers, without bargaining to impasse, is unlawful under the Pennsylvania Wage Payment and Collection Act. *See* 43 Pa.Stat.Ann. §§ 260.1–260.45 (Purdon 1964 & Supp.1985). The district court held that the allegations "contained in Count II are, in fact, allegations of an unfair labor practice within the purview of Section 8(a)(5)," and that federal labor law preempted the state law claim. Joint Appendix at 823.

■ Suits which allege unfair labor practices indisputably belong to the exclusive jurisdiction of the NLRB. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959). The Supreme Court has stated that where a claim even arguably lies within section 8, preemption is indicated:

At times it has not been clear whether the particular activity regulated by the States was governed by § 7 or § 8 or was, perhaps, outside both these sections. But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board. What is outside the scope of this Court's authority cannot remain within a State's power and state jurisdiction too must yield to the exclusive primary competence of the Board. See, *e.g., Garner v. Teamsters Union*, 346 U.S. 485 [74 S.Ct. 161, 98 L.Ed. 228], especially at 489–491 [74 S.Ct. at 165–66]; *Weber v. Anheuser-Busch, Inc.*, 348 U.S. 468 [75 S.Ct. 480, 99 L.Ed. 546].

*Id.* at 244–45, 79 S.Ct. at 779. The issue is therefore whether the district court properly found that the gravamen of Count II was a section 8(a)(5) NLRA unfair labor practice charge, and was therefore preempted. It is well established that, under NLRA § 8(a)(5), the employer must continue the terms of a collective bargaining agreement until it has bargained to an impasse, and may not unilaterally change its terms until then. *See, e.g., American Distributing Co. v. NLRB*, 715 F.2d 446, 449 (9th Cir.1983), *cert. denied*, 466 U.S. 958, 104 S.Ct. 2170, 80 L.Ed.2d 553 (1984). Count II clearly alleges that A & P had unilaterally changed the terms of a collective bargaining agreement prior to bargaining to impasse. Such conduct is regulated by NLRA § 8(a)(5). Therefore, the district court did not err in ruling that the state claim was preempted.

### B.

### The Section 8(a)(5) Claim

■ While the trustees contend that the collective bargaining agreement was extended, their fallback position is that section 8(a)(5) of the NLRA required A & P to maintain the status quo, that failure to do so is a violation of section 515 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1145 (1982), and that they may vindicate the violation under the

enforcement provision in section 502 of ERISA. 29 U.S.C. § 1132 (1982). The district court rejected this contention.

Section 515 provides:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or *under the terms of a collectively bargained agreement shall,* to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145 (emphasis supplied). The language of the section, therefore, does not support the trustees' position.

Nevertheless, the trustees argue that the phrase "obligated to make contributions" in section 515 includes not only those obligations arising "under the terms of the plan or under the terms of a collective bargaining agreement," but also obligations statutorily imposed under NLRA section 8(a)(5) which prohibits an employer from unilaterally changing the existing terms or conditions of employment before a bargaining impasse has been reached. In support of that interpretation the trustees advocate that we incorporate into section 515's contractual obligation the "obligation to contribute" which is contained in section 1392, Subtitle E of ERISA. Section 1392 defines the "obligation to contribute" stating.

§ 1392. Obligation to contribute

(a) Definition

*For purposes of this part,* the term "obligation to contribute" means an obligation to contribute arising—

(1) under one or more collective bargaining (or related) agreements, or

(2) as a result of a *duty under applicable labor-management relations law,*

. . . .

29 U.S.C. § 1392 (emphasis supplied). Subtitle E was added to ERISA in 1980 by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), Pub.L. No. 96–364, 94 Stat. 1208, which was enacted to "remedy certain defects" of ERISA dealing with multi-employer pension plans. H.R.Rep.

No. 869, 96th Cong., 2d Sess. 51, *reprinted in* 1980 U.S.Code Cong. & Ad.News 2918, 2919.

The trustees suggest this definition should be applied to section 515 of ERISA notwithstanding the specific admonition that it apply only "[f]or purposes of this part [i.e. Part 1 of Subtitle E, Employer Withdrawals from Multiemployer Plans.]" 29 U.S.C. § 1392. As support for this position, they rely on *Laborers Health & Welfare Trust Fund v. Hess,* 594 F.Supp. 273 (N.D.Cal.1984). In *Hess,* the court ruled that an employer was liable under ERISA section 515 for continued pension fund contributions on the basis of the trustees' rationale. Although the *Hess* court recognized the language of section 1392(a) limiting its definition of "obligation to contribute" to the MPPAA, it stated in a footnote that applying different definitions to that phrase in different sections of ERISA would create unnecessary discontinuity in the regulatory scheme. *Id.* at 279, n. 7.

We find the reasoning of the Court in *Mo-Kan Teamsters Pension Fund v. Botsford Ready Mix Co.,* 605 F.Supp. 1441, 1444–46 (W.D.Mo.1985), more persuasive. When faced with an identical situation, the *Botsford* court expressly rejected the *Hess* rationale. It reasoned that by explicit language, Congress had indeed intended a different result under the two sections: "Congress chose to include both types of obligations in determining withdrawal liability [section 1392], but chose to create a cause of action and provide special damages for recovery of delinquent contributions only if those contributions were due under an agreement entered into by the employer [section 515]." *Id.* at 1445.

The district court therefore did not err in finding that section 515 of ERISA does not provide a ground for the appellants' claim in the absence of a valid labor agreement.

## C.

### Other Contentions

The trustees' remaining contention is that A & P is for several reasons estopped

from denying that the collective bargaining agreement continued in effect. That estoppel contention is related to the underlying contract claim discussed in Part I above, and should be considered by the trial court in connection with that claim.

### III.

We hold that the district court properly dismissed the trustees' claims predicated upon the Pennsylvania Wage Payment and Collection Act and on section 8(a)(5) of the NLRA, but that it erred in holding that their claim for enforcement of the collective bargaining agreement was barred by collateral estoppel. The judgment appealed from will therefore be reversed and the case remanded for further proceedings.

ADAMS, Circuit Judge, concurring.

Because the panel opinion discusses many issues not raised by this appeal, it is necessary, I believe, to restate the decisive question that is before us: Are the interests of the trustees of the pension fund sufficiently congruent with those of Local 590 to justify holding the trustees bound by the results of the arbitration in which the union alone participated? I join in the majority's result because I agree that the answer to this question is no. Given the divergence of interests between a union and the trustees of a pension fund, as recognized in *Trustees of Local 478 Trucking and Allied Industries Pension Fund v. Siemens Corp.*, 721 F.2d 451, 457 (3d Cir.1983), to treat the two parties as being in privity would contravene the common law of judgment preclusion as well as the due process clause.

Nonetheless, I do not join in the panel opinion because of the declarations it sets forth that seem to me wholly unnecessary to the decision of this case. For example, the discussion of the issues concededly *not* presented, *see* majority op. at 896–898, goes beyond what is needed to clarify the question that is presented; it amounts to a series of answers to hypothetical questions concerning arbitration and federal labor law. This appeal does not require the Court to "define the outer reach of the federal labor law policy of binding members of a bargaining unit to bargained-for, dispute-resolution mechanisms," At 896, and I think it is inappropriate for the Court to reach out to do so.

The majority opinion also offers the sweeping conclusion that, *"None* of the policies that have been identified as favoring arbitral resolutions in the collective bargaining context apply to this case." At 897 (emphasis added). But the amenability to arbitration of the underlying dispute over the existence of the collective bargaining agreement is not controverted here. The underlying dispute already has been arbitrated by Local 590, and our sole task is to decide whether the results of that arbitration bind the trustees of the pension plan. I respectfully submit that to answer that question, we need not predict how the Court might adjudicate a number of other complex issues of labor law.