# THE HAWKSBILL SEA TURTLE (ERETMOCHELYS IMBRICATA), et al., Plaintiffs
## v.
# FEDERAL EMERGENCY MANAGEMENT AGENCY, an agency of the United States of America, et al., Defendants

Civ. Action No. 96-114

District Court of the Virgin Islands

Div. of St. Thomas and St. John

September 25, 1996

A. JEFFREY WEISS, ESQ., JAMES BRYAN DOUGHERTY, ESQ., *for Plaintiffs*

RICHARD AUSTIN, ESQ., *for Legal Services of the Virgin Islands.* HON. JULIO BRADY, ESQ., K. GLENDA CAMERON, ESQ., *for the Virgin Islands.* MARK A. BROWN, ESQ., *for Department of Interior and Bruce Babbitt.* STANLEY DE JONGH, ESQ., (Assistant U.S. Attorney), *for the United States.* JORDAN S. FRIED, ESQ., DAVID A. TRISSELL, ESQ., (Office of General Counsel, Federal Emergency Management Agency), *for Federal Emergency Management Agency.* SHAUN SKAGGS, ESQ., (Department of the Interior, Office of Regional Solicitors), *for Department of Interior.* LOUIS PILGRIM, ESQ., (Virgin Islands Housing Authority), *for Virgin Islands Housing Authority.*

BROTMAN, *Judge, Sitting by Designation*

**OPINION**

Presently before the court is plaintiffs' Application for Temporary Restraining Order and Preliminary Injunction. Having con-

sidered plaintiff's application and supporting documents, defendant's opposition papers, and all other motions and documents submitted by the parties, having held a hearing on plaintiffs' motion for preliminary injunction, and for the reasons set forth below, the court will deny the request for preliminary relief.

## I. INTRODUCTION

This is the second of two occasions on which plaintiffs seek to prevent defendants from erecting a temporary emergency housing facility located within Estate Nazareth, St. Thomas, U.S. Virgin Islands (hereinafter "temporary housing project") for nearly 200 families displaced from their homes as a result of Hurricane Marilyn in September 1995.

In January 1996, a group of persons who own real property and reside in the vicinity of Vessup Bay, St. Thomas and who use and enjoy the waters and shoreline of Vessup Bay, Muller Bay, Red Hook Bay, Pillsbury Sound, and adjacent waters filed suit in the United States District Court in the District of the Virgin Islands to enjoin the construction of the temporary housing project on Tract No. 1, Red Hook Quarter, St. Thomas.[1] In that case, *Virgin Islands Tree Boa v. Witt*, 918 F. Supp. 879 (D.V.I.), aff'd, 82 F.3d 408 (3d Cir. 1996) (hereinafter "*Tree Boa*"), plaintiffs alleged that the temporary housing project would cause harm to the Virgin Islands Tree Boa and other endangered species.[2] In particular, plaintiffs alleged that the Federal Emergency Management Agency ("FEMA") and the United States Fish and Wildlife Service ("USFWS") had violated the National Environmental Policy Act ("NEPA") and the Endangered Species Act ("ESA") by not protecting and conserving

---

[1] Among the plaintiffs was also a condominium association representing individual unit owners at the Eastwind Condominiums as well as three endangered and protected species, named as parties in their own right.

[2] In the first action, the Virgin Islands Tree Boa (Epicrates monensis granti) was a named plaintiff together with 86 St. Thomas residents and property owners. While the Hawksbill Turtle (Eretmochelys imbricata) and the Green Sea Turtle (Chelonia mydas) were not named parties in the first suit, plaintiffs presented information regarding the project's effect on the turtles and their habitat in an evidentiary hearing held to determine whether injunctive relief was appropriate. In denying the motion for preliminary injunction, Judge Finch supported his decision with detailed findings of fact and conclusions of law, including findings concerning the sea turtles and their habitat, Vessup Bay.

endangered species during the environmental consultation stage of the temporary housing project. The court, however, denied plaintiffs' request for preliminary injunctive relief.

After hearing oral argument on March 4, 1996, the United States Court of Appeals for the Third Circuit affirmed the District Court's opinion and order denying relief. On March 29, 1996, plaintiffs filed a motion dismissing their original complaint.

In the present action, plaintiffs again seek to enjoin construction and occupation of the temporary housing project. Now again, plaintiffs allege that, in planning for and providing the temporary emergency shelters, defendants violated numerous provisions of the ESA and caused irreparable harm to several endangered and threatened species and their habitats in the area of and around Vessup Bay in St. Thomas. In specific, plaintiffs allege harm to the Virgin Islands Tree Boa, the Hawksbill Turtle, the Green Sea Turtle, and other unnamed species.[3]

## II. PROCEDURAL HISTORY

On April 2, 1996, plaintiffs in the present matter filed a motion for a temporary restraining order in the District Court for the District of Columbia. That court denied plaintiff's request for temporary injunctive relief and, before hearing oral argument on plaintiff's motion for a preliminary injunction, transferred the case to the District Court of the Virgin Islands on May 30, 1996. On June 6, 1996, Judge Raymond Finch recused himself from hearing the case, which was then assigned to Judge Stanley S. Brotman, Senior Judge of the District of New Jersey, sitting by designation. Between June 6, 1996 and the present, the parties have filed numerous motions and supporting documents with the court. On July 18, 1996, Magistrate Judge Jeffrey Resnick granted the motion of the Legal Services of the Virgin Islands to intervene as party-defendants on behalf of the indigent parties who are the prospective residents of the temporary housing project at Estate Nazareth.

A two-day hearing on plaintiffs' application for a preliminary injunction was held on August 7 and 8 before Judge Brotman at the

---

[3] In the present action, the Hawksbill Sea Turtle, the Green Sea Turtle, and the Virgin Islands Tree Boa are named plaintiffs.

United States Courthouse in Camden, New Jersey, during which the parties presented testimony and evidence. At this hearing, the court granted the Virgin Island Housing Authority's ("VIHA") motion to intervene. Thereafter, the parties have continued to submit evidence to this court for consideration pursuant to the court's directives at the hearing.

### III. FACTUAL HISTORY

Judge Finch's opinion in Tree Boa provides a detailed accounting of the facts underlying the present case. For present purposes, the most salient facts are hereinafter set forth.

In September 1995, Hurricane Marilyn struck St. Thomas, displacing hundreds of people from their homes and causing substantial property damage. Pursuant to Section 501 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. § 5170 (1988) ("Stafford Act"), President Clinton declared the Virgin Islands a disaster area. Five months after the hurricane, many low-income Virgin Island residents were still living in emergency shelters or in condemned homes. Pursuant to the Stafford Act, FEMA made funds available to VIHA for a temporary housing shelter project. VIHA reviewed several sites and ultimately selected 8.5 acres at Estate Nazareth adjacent to Vessup Bay.

In preparing for the temporary housing project, FEMA issued a Final Environmental Assessment ("EA") report. In conjunction with this report, FEMA analyzed any effects that the project might have on the environment. As part of its analysis, FEMA consulted with officials from various agencies, including USFWS. Correspondence with USFWS revealed that the project could potentially affect the habitat of the Virgin Islands Tree Boa. A USFWS biologist recommended certain measures to mitigate the effect on the Tree Boa and concluded that the project was not likely to affect adversely the species.

In addition to these mitigation measures for the Tree Boa, FEMA also recommended measures to preserve Vessup Bay, which it recognized as a "sensitive habitat."[4] Because Vessup Bay would

---

[4] Although the EA did not mention the Hawksbill and Green Sea Turtles specifically, both are endangered or threatened species which have habitats in the Bay.

collect runoff from the project, the EA described measures to minimize the effects of sediment and sewage runoff. Based on its own information and its consultation with other agencies, FEMA concluded that the project was unlikely to have any adverse effect on the marine environment in the Bay.

On December 4, 1995, construction of the temporary housing project began. There is no dispute among the parties that there are Tree Boas in the area.[5] However, the EA provided for numerous mitigation measures to protect, *inter alia*, the Tree Boa and the environment at the temporary housing project site. These mitigation measures included soil erosion, sewage control, and land clearing guidelines, as well as provisions calling for flat surfaces to prevent erosion and runoff from the site. In the course of the construction, VIHA enacted additional mitigation measures, such as laying down gravel and installing silt fences to further prevent runoff. On January 11, 1996, sediment began to appear in Vessup Bay. While the *Tree Boa* plaintiffs averred in their motion for injunctive relief that the construction at the temporary housing project caused the sediment-containing runoff, Judge Finch concluded that 1) plaintiffs' evidence did not prove the source of the runoff, and 2) mitigation measures provided for in the EA and enacted subsequent to it were sufficient. Tree Boa, 918 F. Supp. at 890.

## IV. THE PARTIES' CLAIMS

### A. Plaintiffs' Request for Relief

Plaintiffs seek declaratory and injunctive relief for alleged violations of sections 7(a)(1), 7(a)(2), 7(c)(1), and 9(a)(1) of the ESA. Plaintiffs' complaint sets forth six claims which allegedly provide the basis for this court to issue the requested relief.

First, plaintiffs claim that in the course of defendants' construction of the temporary housing project at Estate Nazareth, defendants violated section 7(a)(1) by failing to conserve the St. Thomas

---

[5] In July, plaintiffs represented that approximately three or four Tree Boas had been sighted at the temporary project site.

Tree Boa, the Hawksbill Sea Turtle, and the Green Sea Turtle.[6] Plaintiffs aver that defendants' construction of the temporary housing project will harm these species. (Compl. ¶ 43.)

Second, plaintiffs allege three separate violations of section 7(a)(2):[7] (1) The construction and operation of the temporary housing project will violate the ESA by jeopardizing the continued existence of the St. Thomas Tree Boa. (Compl. ¶ 47.) (2) Failing to advise FEMA that the temporary housing project may affect the Hawksbill Turtle and the Green Sea Turtle and concluding that the housing project 'was not likely to adversely affect this species' violated the ESA. (Compl. ¶ 51.) (3) FEMA's failure to initiate a consultation with regard to the Hawksbill Turtle and Green Sea Turtle violated the ESA. (Compl. ¶ 53.)

Third, plaintiffs aver that FEMA violated section 7(c)(1) by failing to prepare a "biological assessment" addressing the possible impacts of the temporary housing project on the St. Thomas Tree Boa, the Hawksbill Turtle, or the Green Sea Turtle.[8] (Compl. ¶ 57.)

Finally, plaintiffs allege that the funding, construction, and operation of the temporary housing project (1) has killed and injured the Virgin Island Tree Boa, or will cause this species to be killed and injured; (2) has adversely affected the habitat of the Virgin Islands Tree Boa to impair that species' essential behavioral

---

[6] Section 7(a)(1) of the ESA provides, in pertinent part, "Federal agencies shall, in consultation with and with the assistance of the Secretary, utilize their authorities in furtherance of the purpose of this chapter by carrying out programs for the conservation of endangered species and threatened species listed pursuant to section 1533 of this title." 16 U.S.C. § 1536(a)(1) (1985).

[7] Section 7(a)(2) of the ESA provides, in pertinent part, "Each Federal agency shall, in consultation with and with the assistance of the Secretary, insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species which is determined by the Secretary . . . to be critical, unless such agency has been granted an exemption for such action . . . ." 16 U.S.C. § 1536(a)(2).

[8] Section 7(c)(1) of the ESA provides, in pertinent part, "To facilitate compliance with the requirements of [section 1536(a)(2)], each Federal agency shall . . . request of the Secretary information whether any species which is listed or proposed to be listed may be present in the area of . . . proposed action. If the Secretary advises, . . . such agency shall conduct a biological assessment for the purpose of identifying any endangered species or threatened species which is likely to be affected by such action. . . ." 16 U.S.C. § 1536(c)(1).

patterns; (3) has caused increased discharge of partially treated sewage effluent and sediment runoff into Vessup Bay, Muller Bay, and Red Hood Bay, or will cause such discharge in the future; and (4) has killed and injured individual Hawksbill Turtles and Green Sea Turtles. In sum, plaintiffs aver that the funding, construction, and operation of the temporary housing project effectuates a "taking" of an endangered or threatened species and therefore violates section 9(a)(1)(B) of the ESA.[9] (Compl. ¶¶ 60-65.)

## B. Defendants' Response

Defendants oppose plaintiffs' motion and contend that this court should deny the application for injunctive relief for several reasons. At the onset, defendants argue that because plaintiffs provided written notice of their lawsuit to Secretary of the Interior Bruce Babbitt and not to the Secretary of Commerce, plaintiffs failed to provide proper notice pursuant to 16 U.S.C. § 1540(g)(2)(A). Therefore, defendants contend that this court must dismiss plaintiffs' claim.

Further, defendants argue that this, plaintiffs' second application for preliminary relief, does not present a case or controversy under Article III. Defendants assert that the court has decided plaintiffs' claims with respect to the Tree Boa in the previous *Tree Boa* litigation. In addition, defendants aver that Judge Finch in *Tree Boa* also addressed plaintiffs' factual claims regarding sea turtles. Therefore, defendants contend that plaintiffs' claims in the current motion are moot and that this court lacks jurisdiction to hear them.

Third, defendants assert that plaintiffs cannot satisfy the requirements that would allow a court to issue a preliminary injunction. That is, plaintiffs cannot show a likelihood of success on the merits; cannot demonstrate irreparable harm; and cannot produce evidence to convince the court that the possibility of harm to other interested parties and the public interest favor preliminary relief. In particular, defendants assert that they completed the requisite

---

[9] Section 9(a)(1)(B) of the ESA provides, in pertinent part, "Except as provided in sections 1535(g)(2) and 1539 of this title [which provide for exemptions from compliance for certain agency actions], . . . it is unlawful for any person subject to the jurisdiction of the United States to take any [endangered species of fish or wildlife listed pursuant to section 1533 of this title] within the United States or the territorial sea of the United States." 16 U.S.C. § 1538(a)(1)(B) (1985).

consultation necessary to proceed with the temporary housing project, and that such consultation not only satisfied the requirements under section 7 of the ESA but also prevents plaintiffs from now showing a likelihood of success on the merits.

Further, defendants argue that the court must review an agency's contested compliance with the ESA under the narrow "arbitrary and capricious" standard of the Administrative Procedure Act. In light of this standard of review, defendants contend that plaintiffs cannot show that the Department of Fish and Wildlife Service's findings with respect to the temporary housing project—in particular, the findings regarding the Tree Boa—were arbitrary and capricious. In reference to the sea turtles, defendants suggest that *Tree Boa*'s factual findings support the conclusion that here, too, plaintiffs cannot establish a likelihood of success on the merits. Similarly, defendants assert that plaintiffs cannot demonstrate a likelihood to succeed on the merits of their section 9 claims in light of the factual findings in *Tree Boa*.

Defendants also argue that plaintiffs cannot establish the requisite showing of irreparable harm with respect to either the Tree Boa or the sea turtles. Defendants assert that in light of *Tree Boa*'s factual findings, plaintiffs cannot demonstrate that the temporary housing project will result in the extinction of the Tree Boa or that sediment-laden runoff into Vessup Bay originates from the project.

Finally, defendants contend that the interests of FEMA and the homeless residents of the Virgin Islands implicate the public interest and preclude this court from issuing a preliminary injunction. Moreover, defendants suggest that enjoining construction of temporary housing project would constitute the type of harm to third parties that bars a court from granting preliminary injunctive relief.

## C. Other Motions

Following the evidentiary hearing conducted on August 7 and 8, 1996, during which the court heard testimony and received evidence in support of and in opposition to plaintiffs' application, the court accepted various documents in lieu of live testimony at the hearing. Thus, in addition to the briefs and exhibits submitted to the court prior to the hearing, the court has considered numerous

221

additional documents and supplemental briefings on discrete subjects relating to the matter at hand. Both plaintiffs and defendants have challenged the admissibility of portions of these documents. In particular, defendants filed a Motion to Strike portions of plaintiffs' exhibits in support of their motion for a temporary restraining order and preliminary injunction.[10] Plaintiffs, in turn, similarly filed two separate Motions to Strike: one to strike an affidavit submitted by VIHA; another to strike two exhibits from defendants' previously filed submissions.[11]

In the context of a request for an interlocutory judgment, "the rules of evidence are relaxed so as to provide swift relief, avoid lengthy proceedings and prevent irreparable harm." *Commodity Futures Trading Comm'n v. American Metal Exch. Corp.*, 693 F. Supp. 168, 173 (D.N.J. 1988) (citations omitted). Further, hearsay materials and evidence other than live testimony may be properly considered by the court in preliminary injunction proceedings. *Id.* In light of this relaxed standard at this preliminary juncture, this court will deny plaintiffs' and defendants' Motions to Strike.

Plaintiffs also filed a Motion for an Order to Show Cause to Hold VIHA in Contempt of Court for failure to comply with a court order to submit an affidavit with specific information regarding the temporary housing project. This motion will be denied. VIHA did submit to the court an affidavit containing the requested information.

Finally, VIHA filed a Motion for an Order Excusing Legal Services of the Virgin Islands from attendance at the hearing on plaintiffs' application for preliminary injunction, held on August 7 and 8 in Camden, New Jersey. This motion will be granted.

## V. DISCUSSION

### A. Notice of Intent to Sue

■ 16 U.S.C. § 1540(g)(2)(A) provides that parties may com-

---

[10] In particular, defendants sought to strike (1) the affidavit of Ralph Boulon submitted in plaintiffs' "Exhibits in Support of Motion for Temporary Restraining Order and Preliminary Injunction;" and (2) certain paragraphs of plaintiffs' supplemental affidavit of Peter Tolson.

[11] In particular, plaintiffs filed a Motion to Strike the affidavit of William Karr, a VIHA witness. Plaintiffs' second Motion to Strike concerned exhibits B and D from defendants' "Objections to the Affidavits of Peter Tolson and Teresa Turner."

mence civil suits to enforce the ESA but must give written notice of the alleged violation to the Secretary and to any alleged violator of a provision or regulation at least sixty days prior to bringing suit. *See* 16 U.S.C. § 1540(g)(2)(A) (1985). The ESA defines "Secretary" as "the Secretary of the Interior or the Secretary of Commerce as program responsibilities are vested pursuant to the provisions of Reorganization Plan Numbered 4 of 1970. 16 U.S.C. § 1532(15) (1985). The Reorganization Plan, in turn, assigns to the Secretary of Commerce various enumerated functions formerly under the supervision of the Secretary of the Interior. *See* Reorg. Plan No. 4 of 1970, eff. Oct. 3, 1970, 35 F.R. 15627, 84 Stat. 2090, set out in 5 U.S.C. app. 1 (1996).

50 C.F.R. § 222 implements, in part, the ESA. *See* 50 C.F.R. § 222.1 (1995); *see also* 50 C.F.R. § 217.1-2 (1995) (noting purpose and scope of regulations as implementing statutes enforced by Department of Commerce). Section 222 provides, in pertinent part, that the species of fish and wildlife determined to be endangered under the ESA are under the jurisdiction of the Secretary of Commerce. *Id.; see also* 50 C.F.R. § 222.23 (identifying Pacific hawksbill sea turtle and Atlantic hawksbill sea turtle). Only endangered species of fish or wildlife not listed in section 222.23 are under the jurisdiction of the Secretary of the Interior. 50 C.F.R. § 217.2 (1995). Further, section 222.23 explicitly states that the National Marine Fisheries Service ("NMFS") has sole agency jurisdiction for sea turtles while the turtles are in the water.[12] *See also* 50 C.F.R. § 402.01(b) (1995) (addressing interagency cooperation in implementing ESA; noting particular jurisdiction of NMFS). Similarly, section 227.4 establishes that the Secretary of Commerce maintains jurisdiction over the Green sea turtle while the turtles are in the water. 50 C.F.R. § 227.4 (1995).

In light of this apparent and deliberate delineation of jurisdiction and responsibility for endangered species between the Secretary of Commerce and the Secretary of Interior, this court examines plaintiffs' alleged compliance with the notice requirements of the

---

[12] The U.S. Fish and Wildlife Service has jurisdiction for sea turtles while the turtles are on land. 50 C.F.R. § 222.23.

ESA. Plaintiffs' complaint avers that they satisfied the procedural notice requirements by "providing defendants the requisite 60 days written notice to redress violations of §§ 7(a), 7(c), and 9 of the ESA." (Compl. ¶ 3(a).) Defendants' answer denies plaintiffs' allegations of proper notice, and asserts the affirmative defense that, in fact, plaintiffs did *not* properly comply with the ESA's notice requirements. (Ans. ¶ 3(a); First Aff. Def. ¶ 2.) According to defendants' submissions, plaintiffs submitted to the Secretary of the Interior a letter of intent to sue. Plaintiffs' application for injunctive relief alleges, *inter alia*, that defendants' actions harmed the Hawksbill sea turtles, the Green sea turtles, and these species' marine habitat.

■ Under the regulations implementing the ESA, *supra*, the Secretary of Commerce, not the Secretary of the Interior, maintains jurisdiction over and responsibility for the species named in plaintiffs' present action. Accordingly, plaintiffs' notice to the Secretary of Interior does not satisfy the statute. Substantial compliance does not suffice. *See Save the Yaak Comm. v. Block*, 840 F.2d 714, 721 (9th Cir. 1988). In *Save the Yaak*, plaintiffs who claimed defendants had violated the ESA sent carbon copies of their alleged notice to various state and federal legislators. The court determined, however, that these letters did not satisfy the statutory notice requirement because they had not been sent to the proper person—the Secretary—as the statute required.[13]

Therefore, with respect to plaintiffs' claims regarding the sea turtles and their habitat, even if plaintiffs could establish sufficient evidence to permit this court to issue a preliminary injunction, this court would dismiss these claims for failure to comply with the ESA's notice requirements. Conversely, however, even if plaintiffs had properly notified the Secretary of Commerce of their intent to sue, this court must deny the motion for preliminary injunctive relief on grounds that plaintiffs' evidence failed to satisfy the stringent preliminary injunction standard, as discussed *infra* in section D of this opinion.

---

[13] The *Save the Yaak* court also found that the plaintiffs' letters did not specifically give notice of a violation; however, the court emphasized that even if the letters had provided notice of intent to sue, because they were not sent to the correct person, the statutory notice requirement had not been met. *Id.*

## B. Issue Preclusion

Before evaluating plaintiffs' claims in light of the preliminary injunction standard, the court must examine the extent to which *Tree Boa*'s findings of fact affect the court's analysis of the plaintiffs' present allegations.

■ The doctrine of issue preclusion prevents relitigation of issues that have been decided in a previous action. *Montana v. United States*, 440 U.S. 147, 59 L. Ed. 2d 210, 99 S. Ct. 970 (1979); *United States v. Pennsylvania*, 1994 WL 502352 (E.D. Pa. 1994). Also referred to as collateral estoppel, the doctrine "protect[s] litigants from the burden of relitigating an identical issue with the same party or his privy and . . . promotes judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 58 L. Ed. 2d 552, 99 S. Ct. 645 (1979). Issue preclusion arises when several factors are established: (1) the issue stated by a party in a current action before the court has already been presented in a prior adjudication; (2) the issue was "actually litigated"— resolved and decided in the prior adjudication; (3) the prior adjudication concluded with a final and valid judgment on the merits;[14] and (4) the issue previously decided was essential to the judgment in the prior action. *Burlington N. R.R. v. Hyundai Merchant Marine Co.*, 63 F.3d 1227, 1231-32 (3d Cir. 1995); *see also Temple University v. White*, 941 F.2d 201, 212 (3d Cir. 1991), *cert. denied*, 502 U.S. 1032 (1992); *O'Leary v. Liberty Mutual Ins. Co.*, 923 F.2d 1062, 1065-66 (3d Cir. 1991).

Plaintiffs suggest, in error, that the fact that not all plaintiffs to this action were parties to the *Tree Boa* application for preliminary injunction prevents this court from applying the doctrine of issue preclusion. In the first application for injunctive relief before Judge Finch, the named plaintiffs included eighty-five individual property owners and residents of St. Thomas (hereinafter "original individual plaintiffs"), one non-individual association, and one

---

[14] According to the Restatement of Judgments, Second, for purposes of issue preclusion, 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." Restatement (Second) of Judgments § 13 (1982). Moreover, a judgment can be "final" even if it merely grants or denies continuing relief such as an injunction. *See* Restatement (Second) of Judgments § 13 cmt. c.

endangered species. In this second application for injunctive relief before this court, the action is brought by forty-seven of the original individual plaintiffs, the same non-individual association, and the same endangered species. In addition, it names four additional individuals and the attorney from the former application as parties;[15] it also names two additional endangered species as parties.

■ This court will not reward plaintiffs' attempt to circumvent the doctrine of collateral estoppel by adding to their present application for preliminary relief five individual plaintiffs and two animal species not named in the previous action. The District Court for the District of New Jersey has held that "in certain circumstances, a party not named to a prior action may be issue precluded in a subsequent action when it was in *privity* with a party in the prior action." *Symbol Technologies v. Metrologic Instruments*, 771 F. Supp. 1390, 1400 (D.N.J. 1991) (emphasis added). Privity is a question of fact for the trial court. *Aerojet-General Corp. v. Askew*, 511 F.2d 710 (5th Cir.), *cert. denied*, 423 U.S. 90 (1975). Moreover, privity exists when there is "substantial identity of parties," *Symbol*, 771 F. Supp. at 1400 (quoting *Chicago, Rock Island & Pac. Ry. v. Schendel*, 270 U.S. 611, 621, 70 L. Ed. 757, 46 S. Ct. 420 (1926)), when "the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata." *Bruszewski v. United States*, 181 F.2d 419, 423 (3d Cir.), *cert. denied*, 340 U.S. 865, 95 L. Ed. 632, 71, 71 S. Ct. 87 S. Ct. 87 (1950).

Principles of fairness and due process require a court to find a "virtual representation" or a "virtual relationship" between the party to be bound and the party of record. *Symbol Technologies*, 771 F. Supp. at 1400. The Third Circuit has not defined "virtual representation" in the context presently before this court; that is, while the Third Circuit has construed state issue preclusion principles in a diversity case, *see Collins v. E.I. Dupont De Nemours & Co.*, 34 F.3d 172, 176 (3d Cir. 1994), this court confronts a novel

---

[15] The attorney, A. Jeffrey Weiss, again represents all plaintiffs in the present application for a preliminary injunction.

scenario involving a previous judgment rendered in this court regarding issues of federal law.

Pre-*Collins* cases in this circuit support this court's finding that the addition of seven formerly unnamed plaintiffs to the present request for injunctive relief does not preclude this court's application of collateral estoppel because these plaintiffs were "virtually represented" in the first action.[16] In *Moldovan v. Great Atlantic & Pacific Tea Co.*, 790 F.2d 894 (3d Cir. 1986), *cert. denied*, 485 U.S. 904, 99 L. Ed. 2d 233, 108 S. Ct. 1074 (1988), the Third Circuit prescribed the analysis a court should adopt in determining whether a particular party was "virtually represented" in a prior action. First, the *Moldovan* court noted that due process concerns circumscribe a finding of virtual representation and require "that a party against whom collateral estoppel has been asserted have some fair relationship with the prior litigation relied upon." *Id.* at 899. The court also explained that any privity analysis should center on a finding of an identity of interests between the first and second party.[17] *Id.* Once a court identifies such an identity, then, the second party can be deemed in privity with the first, and is collaterally estopped from relitigating an issue decided in a previous action.

More recently, in *First Options of Chicago, Inc. v. Kaplan*, 913 F. Supp. 377 (E.D. Pa. 1996), the District Court for the Eastern District of Pennsylvania followed the Third Circuit's guidelines from *Moldovan* and emphasized that the privity inquiry "should be flexible enough to acknowledge the realities of parties' relationships." *Id.* at 384 (citing *Bruszewski*, 181 F.2d at 423). Moreover, the

---

[16] The court does not suggest that the formerly unnamed plaintiffs had a duty to intervene in the prior action; indeed, this court recognizes that "the law does not impose upon any person . . . the burden of voluntary intervention in a suit to which he is a stranger." *Martin v. Wilks*, 490 U.S. 755, 763, 104 L. Ed. 2d 835, 109 S. Ct. 2180 (quoting *Chase Nat'l Bank v. Norwalk*, 291 U.S. 431, 441, 78 L. Ed. 894, 54 S. Ct. 475 (1934)). Rather, the court finds that the additional plaintiffs in the second application for injunctive relief were virtually represented in *Tree Boa* and thus privies to the plaintiffs in *Tree Boa*. As such, the judgment afforded the *Tree Boa* plaintiffs affects the present plaintiffs equally. *Cf. id.* (quoting *Chase*, 291 U.S. at 441) ("[A] person *not a privy* may rest assured that a judgment recovered [in a prior legal proceeding] will not affect his legal rights.") (emphasis added).

[17] The *Moldovan* court emphatically distinguished identity of *interests* between parties and identity of *issues* in the two actions, concluding that the former determined whether privity existed to bar future parties from relitigating matters already decided in a previous action. *Id.* at 899.

*First Options* court noted that the virtual representation analysis involves consideration of several factors, including the relationship between the parties, the relationship between the nonparty and the prior litigation, and the nature of the respective interests involved. *Id.* at 384-85 nn. 10-11.

With this circuit's privity analysis as a backdrop, this court's finding that all plaintiffs in the present action were "virtually represented" in *Tree Boa* not only promotes judicial efficiency and economy, but also thwarts any attempt to engage in forum shopping. It is well recognized that excessive relitigation of issues already determined imposes great costs—monetarily and otherwise—on litigants and the court system alike. *See* Note, *Collateral Estoppel of Nonparties*, 87 Harv. L. Rev. 1485, 1499-1501 (1974). This court notes particularly that it is the fifth court from which plaintiffs seek a favorable ruling in this matter.[18] At each juncture, the parties' ultimate concern has been the same: to seek redress for the adverse environmental impact of the temporary housing project at Estate Nazareth by enjoining defendants from proceeding with the project's construction. Indeed, the very complaints in both *Tree Boa* and the present action characterize these concerns and interests in the same manner. Notably, both complaints also characterize the plaintiffs similarly: as property owners and residents of St. Thomas and endangered species who use and enjoy the land and water in St. Thomas and are engaged in efforts to preserve the same. *Cf. Wilder v. Thomas*, 854 F.2d 605, 620-21 (2d Cir. 1988) (finding privity even where two new plaintiffs added to subsequent action; noting that "named plaintiffs [in both actions] characterize themselves as individuals who work or live in the project area and who will be injured in their enjoyment of the project area if the project is built"), *cert. denied*, 489 U.S. 1053 (1989). In the present, exceptional case, then, promoting the interests

---

[18] The *Tree Boa* plaintiffs brought their first application for a Temporary Restraining Order to Judge Thomas Moore in the District of the Virgin Islands. Judge Moore granted the TRO but recused himself before an evidentiary hearing on a preliminary injunction was held. At the conclusion of the evidentiary hearing before Judge Finch, Judge Finch denied plaintiffs' application for injunctive relief. After hearing oral argument on the issue on appeal, the Court of Appeals for the Third Circuit affirmed Judge Finch's ruling and denied injunctive relief. Plaintiffs then filed the present action in the District of the District of Columbia seeking a TRO from Judge Gladys Kessler, who denied relief on April 8, 1996 before the action was transferred to this court.

served by estoppel outweighs the non-party's countervailing interest in having the proverbial "day in court," especially where, as here, the court finds that those interests were virtually represented in the prior action. This court will not permit plaintiffs to circumvent judgments of the courts by merely adding new, named parties to subsequent actions regarding the same matter where the interests of the parties and the relationship among the parties are identical.

Plaintiffs also claim that their present action raises claims and issues which were not part of nor addressed in Tree Boa. Moreover, plaintiffs argue that Judge Finch's findings were not "necessary or essential" to the ultimate denial of injunctive relief. Thus, plaintiffs suggest that the requirements of collateral estoppel are not met and that the doctrine does not bar the present action. The Supreme Court, however, has advised otherwise.

█ In *Nevada v. United States*, 463 U.S. 110, 77 L. Ed. 2d 509, 103 S. Ct. 2906 (1983), the Court noted that for purposes of preclusion, two allegedly distinct causes of action may be deemed to be the same if they "arise from the same transaction;" that is, if the facts in the two causes of action are "related in time, space, origin, or motivation." Id. at 130-31 n.12 (citations omitted). In the case at bar, plaintiffs' two separate applications for injunctive relief derive from one factual scenario and boil down to the same wrong: plaintiffs allege that defendants' construction of the temporary emergency housing shelter at Estate Nazareth poses a risk of harm to certain endangered or threatened animal species. The fact that plaintiffs' present action alleges only substantive violations of the ESA—as distinguished from the original Tree Boa action that asserted various procedural and substantive violations of federal, state, and local law—does not affect or alter the facts and occurrences that underlie and support plaintiffs' request for relief.[19]

---

[19] "In deciding whether a judgment granting or denying continuing relief should be given any preclusive relief in a later action *on a different claim*, the question arises whether the issues in the two actions are materially different because of events which occurred in the interim, in which case preclusion is to that extent to be denied." Restatement (Second) Judgments § 13 cmt. c. Moreover, judgments granting or denying continuing relief such as injunctions carry res judicata consequences while the circumstances remain constant. *See id*. A material change of circumstances arising after the court

229

Moreover, at least one of the "substantive" provisions of the ESA which plaintiffs cite in their present application—section 7(c)(1)—appears to anticipate that compliance with NEPA procedural measures can fulfill obligations under the ESA. *See* 16 U.S.C. § 1536(c)(1) (if Secretary requires biological assessment, "such assessment may be undertaken as part of a Federal agency's compliance with the requirements of . . . NEPA"). It follows, then, that where a court has found procedural compliance—as Judge Finch found in *Tree Boa*—plaintiffs' subsequent, related substantive claim premised on the same underpinnings raises nothing new. As such, the cause of action alleged in the present action is the same cause of action already adjudged in *Tree Boa*; and for purposes of the preclusion analysis, collateral estoppel applies to preclude relitigation of plaintiffs' previous claims.[20]

Even recognized exceptions to the collateral estoppel doctrine do not permit a party to relitigate an issue arising out of a dispute for which the party has already had his day in court. *See O'Leary*, 923 F.2d at 1069. In *O'Leary*, the Third Circuit instructed that section 28(2)(b) of the Restatement (Second) of Judgments, which sets forth one exception to the general rule of issue preclusion, "does not permit a party to relitigate an issue in a suit arising out of the same transaction or set of operative facts . . . that formed the basis of the first action." *Id.* In that case, the plaintiff sought recovery in federal district court for the same injury for which he had unsuccessfully sought compensation in a prior action in state court. The Third Circuit upheld the district court's decision to deny relief to the plaintiff on grounds of collateral estoppel because plaintiff's second action in federal court did not state a different demand; rather, plaintiff tried "to relitigate an issue arising out of the selfsame dispute" previously dismissed in state court. *Id.* at 1070.

---

renders judgment can give rise to a new claim based on the later facts, which claim will not be barred by the previous judgment. *Id.*

As stated previously, however, plaintiffs' present application for a preliminary injunction derives from the very same facts which supported their previous motion for relief in *Tree Boa*. There are no "later facts, arising after the court renders judgment" which would require this court to redetermine the merits of plaintiffs' claim before this court.

[20] In light of this analysis, Judge Finch's conclusion that defendants complied with NEPA in the consultation phase of this project precludes plaintiffs' present claim under § 7(c)(1) of the ESA.

The present case is similar. In this, plaintiffs' second application for a preliminary injunction to enjoin construction of a temporary housing facility because of alleged harm to endangered and threatened species, plaintiffs seek the proverbial "second bite at the apple" to establish facts that would constitute procedural and substantive violations of the ESA. This court can not permit them to do so.

Finally, this court notes its broad discretion to determine whether to apply collateral estoppel or issue preclusion. *Parklane*, 439 U.S. at 329. In the context of a prior preliminary injunction proceeding based on the same underlying facts and similar allegations by the plaintiffs, this court must decide whether the findings of fact supporting the court's denial of injunctive relief are binding on a subsequent request for identical preliminary relief. This court finds that the doctrine of issue preclusion prevents relitigation of the same factual issues previously resolved in a similar application for a preliminary injunction. In particular, the findings of fact that support the court's previous decision in *Tree Boa* denying plaintiffs' request for injunctive relief will not be reconsidered in the present motion for a preliminary injunction.

It is true that a trial court, in deciding whether to grant *permanent* relief, is not bound by its previous decision regarding preliminary relief. *United States v. Local 560*, 974 F.2d 315, 330 (3d Cir. 1992) (emphasis added). Indeed, plaintiffs argue that the findings made by Judge Finch in his decision to deny plaintiffs' previous request for a preliminary injunction "constitute nothing more than dicta and surplusage, and are not binding" in plaintiffs' present application for injunctive relief.[21] In essence, plaintiffs contend that Judge Finch's conclusion that he lacked subject matter jurisdiction to determine the merits of plaintiffs' ESA claims represents the entire holding of *Tree Boa*. This court disagrees.

---

[21] Plaintiffs argue that since findings of fact from a preliminary injunction hearing do not bind the reviewing court at a subsequent trial on the merits in the same case. *See University of Texas v. Camenisch*, 451 U.S. 390, 395, 68 L. Ed. 2d 175, 101 S. Ct. 1830 (1981). Plaintiffs' reliance on *Camenisch* is misplaced, since this court is not addressing a motion for permanent relief, nor rendering judgment on the merits of the case. Rather, this court views plaintiffs' claims at the same juncture as Judge Finch reviewed plaintiffs' previous motion—as an application for a preliminary injunction to prevent defendants from harming endangered species through construction of a temporary emergency housing project.

Findings of fact may be given preclusive effect, even if such effect cannot be given to corresponding legal determinations. *In Re Convertible Rowing Exerciser Patent Litigation*, 814 F. Supp. 1197, 1201 (D. Del. 1993) (citations omitted). Plaintiffs' claims would lead to the conclusion that the findings of fact and conclusions of law made in conjunction with a decision to award or deny preliminary injunctive relief are meaningless. This is simply not so. In fact, Federal Rule of Civil Procedure 52 *requires* the district court to "set forth the findings of fact and conclusions of law which constitute the grounds of its action" in granting or refusing interlocutory injunctions. Fed. R. Civ. P. 52(a). Moreover, this requirement serves multiple purposes, not the least of which is informing "a proper application of the doctrines of res judicata and estoppel by judgment." Fed. R. Civ. P. 52(a) advisory committee note. *See also Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1178 (3d Cir. 1990) (language of Rule 52(a) is mandatory); *Professional Plan Examiners of New Jersey v. Lefante*, 750 F.2d 282, 289 (3d Cir. 1984) (findings, conclusions inform parties of rationale for order); *Danny Kresky Enter. Corp. v. Magid*, 716 F.2d 206, 215 (3d Cir. 1983) (findings, conclusions assist appellate courts in reviewing district court decisions). In *Tree Boa*, Judge Finch reviewed each of plaintiffs' nine claims *seriatim*[22] and made specific findings with respect to each claim. These specific findings, in turn, supported Judge Finch's ultimate denial of plaintiff's request for a preliminary injunction.

In the present action, plaintiffs seek the same relief to redress the same harms caused by the defendants' same actions as set forth in plaintiffs' prior application for a preliminary injunction. In this case, moreover, plaintiffs allege the same violations of the ESA that Judge Finch dismissed in *Tree Boa* due to plaintiffs' failure to give proper notice to defendants.[23] This court recognizes that Judge

---

[22] Plaintiffs alleged in nine claims that defendants had violated the National Environmental Policy Act ("NEPA"), ESA, federal and local water pollution control statutes, Virgin Island laws, and constitutional due process provisions.

[23] Although Judge Finch dismissed plaintiffs' claims regarding the alleged ESA violations, he also determined that plaintiffs had not demonstrated a substantial likelihood of success on the merits of their ESA claims. *Tree Boa*, 918 F. Supp. at 901-02. Recognizing the persuasive nature of this legal conclusion, the court nevertheless notes that where a movant does not establish a substantial likelihood of success on the merits, a court cannot issue a preliminary injunction under the traditional four-prong standard. *See In*

232

Finch's conclusions of law with regard to the merits of plaintiffs' ESA claims do not prevent a reassessment of these conclusions in the instant action since Judge Finch formally dismissed these claims on jurisdictional grounds. *See, e.g. Hughes v. United States,* 71 U.S. (4 Wall.) 232, 237, 18 L. Ed. 303 (1866). However, to the extent that Judge Finch's findings of fact with respect to plaintiffs' *other* claims in the previous action apply to plaintiffs' claims in the present action, this court will adopt those findings as conclusive of the factual issues underlying plaintiffs' present request for injunctive relief.

The court notes that disparate burdens of proof in two separate but related proceedings can foreclose application of the issue preclusion doctrine. *In re Braen,* 900 F.2d 621, 624 (3d Cir. 1990), *cert. denied,* 498 U.S. 1066, 112 L. Ed. 2d 845, 111 S. Ct. 782 (1991); *see also* Restatement (Second) Judgments § 28(4). Here, however, plaintiffs' burden of proof does not affect the court's ability to look to the findings in the prior action. Here, plaintiffs come before the court at the same moment on the litigation time line as in *Tree Boa,* and request the same type of preliminary relief.[24] As a result, the burden before this court is the same: To prevail, plaintiffs must establish each of the four prongs of the preliminary injunction standard.

## C. The Four-Prong Preliminary Injunction Standard

■ The standard for issuing a preliminary injunction is well-known. In the Third Circuit, courts evaluate a request for a preliminary injunction according to four factors: (1) the likelihood that the plaintiff will prevail on the merits at the final hearing; (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest. *New Jersey Hosp. Ass'n v. Waldman,* 73 F.3d

---

*re Arthur Treacher's Franchisee Litigation,* 689 F.2d 1137, 1143 (3d Cir. 1982) (noting that failure to satisfy any one of four factors in preliminary injunction analysis must necessarily result in denial of motion for injunction).

[24] In *Tree Boa,* Judge Finch held an evidentiary hearing and ruled on plaintiffs' motion for a preliminary injunction before the parties engaged in discovery. Similarly, this court held an evidentiary hearing on plaintiffs' present request for relief before any discovery took place.

509 (3d Cir. 1995) (quoting *AT&T v. Winback & Conserve Program Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994), *cert. denied*, — U.S. —, 131 L. Ed. 2d 757, 115 S. Ct. 1838 (1995)). Thus, to succeed on an application for a preliminary injunction, the moving party must demonstrate a likelihood of success on the merits and the probability of irreparable harm if relief is not granted. *In re Arthur Treacher's Franchisee Litigation*, 689 F.2d 1137, 1143 (3d Cir. 1982); *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982) (*en banc*). Further, the district court must also consider the possibility of harm to other interested persons and the public interest. *In Re Tutu Wells Contamination Litigation*, 157 F.R.D. 367, 375-76 (D.V.I. 1994) (citing *Opticians Ass'n of America v. Indep. Opticians of America*, 920 F.2d 187, 191-92 (3d Cir. 1990).

As a preliminary matter, plaintiffs contend that the court should abandon its normal practice of considering the balance of equities and hardships when considering an application for preliminary injunctive relief brought under the ESA. They argue that in *TVA v. Hill*, 437 U.S. 153, 57 L. Ed. 2d 117, 98 S. Ct. 2279 (1978), the Supreme Court pronounced that because section 7 of the ESA contains a flat ban on the destruction of critical habitats, it revokes a court's usual, equitable discretion to grant equitable relief in an action involving the ESA. *Hill*, 437 U.S. at 173-74, 194. In *Hill*, the Supreme Court affirmed the issuance of an injunction which ceased construction and closed the nearly completed Tellico Dam in light of alleged harm to the habitat of the snail darter, an endangered species. *Id.* at 195. The Supreme Court affirmed the action to enjoin the construction despite the potential loss of nearly 100 million dollars, noting that Congress "struck [a balance] in favor of affording endangered species the highest of priorities." *Id.* at 187-88, 194-95.

After *Hill*, however, courts faced with applications for preliminary injunctions involving alleged violations of other environmental statutes distinguished Hill and did apply traditional equitable standards in evaluating requests for injunctive relief. *See, e.g., Natural Resources Defense Council v. Texaco*, 906 F.2d 934, 941 (3d Cir. 1990) (traditional equitable standards apply to assess motion for injunctive relief for alleged violations of Clean Water Act); *Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 544-45, 94 L. Ed.

2d 542, 107 S. Ct. 1396 (1987) (violation of Alaska environmental statute did not give rise to presumption of irreparable harm but required analysis under traditional equitable principles); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320, 72 L. Ed. 2d 91, 102 S. Ct. 1798 (1982) (Federal Water Pollution Control Act does not foreclose exercise of court's discretion to award equitable relief for alleged environmental violation). In each case, the courts distinguished *Hill* and found that *Hill* did not relieve them of their duty to balance the competing claims of injury, the consequences to each party, and the public interest. Indeed, the Court of Appeals for the Second Circuit declared—after *Hill*—that "in the area of environmental statutes, the Supreme Court has explicitly rejected the notion that an injunction follows as a matter of course upon a finding of statutory violation." *Town of Huntington v. Marsh*, 884 F.2d 648 (2d Cir. 1989), *cert. denied*, 494 U.S. 1004, 108 L. Ed. 2d 473, 110 S. Ct. 1296 (1990).

The facts in the present case are similarly distinguishable from those in *Hill*, thus permitting this court to address the traditional equitable factors in determining whether to issue injunctive relief. First, as a procedural matter, this court must decide a motion for a preliminary injunction, while *Hill* involved permanent injunctive relief.[25] Second, in *Hill*, the parties did not dispute that the construction of the dam would result in the complete destruction of the snail darter's habitat. In fact, on the basis that the parties in *Hill conceded* that completion of the dam would destroy the habitat of an endangered species—in direct contravention of explicit provisions of the ESA—the Court concluded that the purpose and language of the ESA required the Court to issue an injunction without engaging in equitable analysis. *Hill*, 437 U.S. 153 at 171, 187-88, 57 L. Ed. 2d 117, 98 S. Ct. 2279. Here, not only do the parties dispute the effects of the temporary housing project on the three animal species, but also the judge in *Tree Boa* has made factual findings determining that 1) the Estate Nazareth temporary project and its residents pose an insignificant risk to the Tree Boa and its

---

[25] Preliminary injunctions are warranted in fewer circumstances than general injunctive relief because courts award preliminary injunctions before discovery is complete. *AT&T*, 42 F.3d at 1427. The court notes that at the present juncture, no discovery has been held.

habitat; and 2) the Estate Nazareth temporary project was not the source of sediment-laden runoff into Vessup Bay. *Tree Boa*, 918 F. Supp. at 890-91.

Most importantly, *Hill* involved a conflict between economic loss and loss to animal life.[26] Under such circumstances, the Supreme Court refused "to balance a sum certain—even \$100 million— against a congressionally declared 'incalculable' value [of the loss of a species]." *Hill*, 437 U.S. at 187-88. Here, if this court grants a preliminary injunction, the potential loss is not merely pecuniary. Instead, the loss involves the equally incalculable value of the sanctity and quality of human life. Potential residents of temporary housing project at Estate Nazareth, displaced from their homes by Hurricane Marilyn, currently live in a waste infested, mosquito ridden area in which disease thrives. Def. Exh. 4. The court in *Tree Boa* has already recognized that both FEMA and the people of the Virgin Islands who live in substandard living conditions will suffer considerable harm if FEMA cannot fulfill its congressional mandate pursuant to the Stafford Act to provide federal emergency assistance when necessary. *Tree Boa*, 918 F. Supp. at 904. In light of these facts, this court will not abandon the traditional equitable principles in evaluating plaintiffs' application for a preliminary injunction; rather, it will assess plaintiffs' request in light of the Third Circuit's four factor test for preliminary injunctions.

## D. Preliminary Injunction Analysis

■ An injunction is an extraordinary exercise of equitable relief. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989). Federal courts are not obligated to grant an injunction to remedy every violation of the law. *Hill*, 437 U.S. at 193. In fact, an injunction may not issue unless "the plaintiff produces evidence to convince the district court that *all four factors* favor preliminary relief." *AT&T*, 42 F.2d at 1427 (citing *Opticians*, 920 F.2d at 192 and quoting *Merchant & Evans v. Roosevelt Bldg. Prods.*, 963 F.2d 628,

---

[26] This court takes particular note that the Supreme Court's decision in *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 132 L. Ed. 2d 597, 115 S. Ct. 2407 (1995)—like the *Hill* Court—resolved a conflict between a community's *economic* concerns and concern for the protection of animals. The case before the court today presents different concerns.

632-33 (3d Cir. 1992)) (emphasis added). In other words, this court may issue a preliminary injunction only if the movant "produces evidence sufficient to convince the district court" that each of four factors compel such relief. *New Jersey Hosp. Assoc.*, 73 F.3d at 512 (quoting *AT&T*, 42 F.3d at 1427)). A failure by plaintiffs to make the requisite showing regarding any of these four factors requires this court to deny their motion for a preliminary injunction. *See In re Arthur Treacher's Franchisee*, 689 F.2d at 1143 ("[A] failure by the moving party to satisfy [the] prerequisites . . . must necessarily result in the denial of a preliminary injunction.").

### 1. Irreparable Harm

To prevail on an application for a preliminary injunction, a movant must demonstrate more than a risk of irreparable harm. In fact, the movant must set forth a "clear showing of immediate irreparable injury," or a "presently existing actual threat." *Acierno v. New Castle County*, 40 F.3d 645, 655 (3d Cir. 1994) (quoting *Continental Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 358 (3d Cir. 1980)).

In assessing whether the *Tree Boa* plaintiffs had established irreparable harm, Judge Finch found that plaintiffs had not proved a causal connection between possible harm to Vessup Bay from silt flowing into the bay and the source of that harm. *Tree Boa*, 918 F. Supp. at 904. In addition, he found that the mitigation measures established for the projected construction of the temporary housing project were adequate. That is, in light of the mitigation measures, the construction did not pose a significant risk to the Tree Boa or its habitat. With respect to the marine animals, *Tree Boa's* factual determination that the sediment runoff could not be traced to the site of the temporary housing project at Estate Nazareth, *id.* at 890, supports this court's conclusion that plaintiffs cannot prove irreparable harm to the sea turtles and their environment.

■ ■ In addition, upon review of Judge Finch's findings, the parties' submissions, and the testimony taken at the evidentiary hearing in the present matter, this court makes the following determinations:

(1) While photographs offered at the evidentiary hearing show

that the coloration of Vessup Bay differs before and after a significant rain event, plaintiffs did not establish that the sediment-carrying runoff that flows into Vessup Bay originates solely from the site of the temporary housing project at Estate Nazareth. As a result, plaintiffs cannot establish that the project is responsible for harm that ensues because of effects of the runoff.

(2) The mitigation measures implemented by defendants are adequate; in light of this finding, plaintiffs cannot establish—as they must—that they will suffer irreparable injury in the absence of injunctive relief.

(3) Defendants engaged in extensive pre-construction consultation and provided for various, specifically targeted mitigation measures. In so doing, defendants "carried out programs for the conservation of endangered species and threatened species" and insured that the temporary housing project would not likely jeopardize or adversely modify these species or their habitat, as required by sections 7(a)(1) and (2) of the ESA.

(4) With the mitigation measures in place, the temporary emergency housing project at Estate Nazareth does not and will not affect adversely the Tree Boa, the Hawksbill Sea Turtle, the Green Sea Turtle, or these animals' habitats. In light of this conclusion, and in light of the previous finding that plaintiffs have not established a causal connection between the temporary housing project and harm to the environment, plaintiffs fail to show irreparable harm as a result of defendants' actions.[27]

■ Plaintiffs' failure to make the requisite showing regarding irreparable harm requires this court to deny the motion for a preliminary injunction. *See In re Arthur Treacher's Franchisee*, 689 F.2d at 1143. Plaintiffs cannot obtain preliminary relief without establishing sufficient favorable evidence with regard to each prong of the four-part analysis. Therefore the court need not reach whether the other three factors in the preliminary injunction inquiry favor granting plaintiffs' application. The court notes,

---

[27] In addition, in light of this finding, the court notes that plaintiffs also cannot establish a likelihood of success that defendants' actions constitute a "taking", and thus violate § 9(a)(1)(B) of the ESA.

238

however, that in light of defendants' apparent compliance with sections 7(a)(1) and (2), plaintiffs also cannot establish likelihood of success on the merits, another required prong of the preliminary injunction analysis.

## VI. CONCLUSION

For all of the above reasons, plaintiffs' Application for a Temporary Restraining Order and Preliminary Injunction is denied. The Court will enter an appropriate order.

## ORDER

THIS MATTER having come before the court on the application of the plaintiffs, The Hawksbill Sea Turtle (Eretmochelys imbricata), et al., for a preliminary injunction;

The court having held an evidentiary hearing on August 7 and 8, 1996 on plaintiffs' motion for a preliminary injunction;

The court having considered the submissions of the parties; and

For the reasons set forth in the court's opinion of this date;

IT IS on this 25th day of September, 1996;

ORDERED that the plaintiffs' application for a preliminary injunction is DENIED.

No costs.